UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AARON L. HARTMAN<br>            Plaintiff<br><br>       v.<br><br>NATIONAL BOARD OF MEDICAL EXAMINERS,<br>            Defendant | Civil Action<br><br>**COMPLAINT FOR THE VIOLATION OF CIVIL RIGHTS: THE AMERICANS WITH DISABILITIES ACT; REQUEST FOR INJUNCTIVE AND DECLARATORY RELIEF.** |

## INTRODUCTION

Plaintiff complains of Defendant and herein alleges that:

1.      This action challenges the discriminatory denial of reasonable testing accommodations as requested by Plaintiff, AARON HARTMAN ("Hartman") on the United States Medical Licensing Examination ("USMLE") Step 2 Clinical Skills ("CS").  The discrimination challenged herein has deprived Plaintiff Hartman, a person with disabilities from taking the USMLE Step 2 CS examination on a level playing field with his non-disabled peers. These civil rights violations are ongoing and include discrimination and failure to provide appropriate and reasonable accommodations and auxiliary aids for persons with impaired speaking skill, in violation of the Americans with Disabilities Act, 42 U.S.C. §12101, et. seq. as amended ("ADA") .  Immediate and permanent injunctive relief is necessary to ensure that Hartman is no longer excluded from, deterred from or otherwise discriminated against in taking the USMLE Step 2 CS.

2. Defendant, National Board of Medical Examiners ("NBME") has failed to provide Hartman with reasonable testing accommodations and auxiliary aids for persons with impaired speaking skills which include the use of assistive technology such as use of a computer or electronic device and use of text to speech software. Hartman submitted to NBME documentation of his disability and has requested reasonable accommodations and auxiliary aids for persons with impaired speaking skills. Hartman brings this action to enforce his fundamental rights to reasonable accommodations and equal educational opportunities under the Americans with Disabilities Act.

## JURISDICTION

3. This claim arises under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, et seq., as amended *(*Pub. L. No. 110-325, 122 Stat. 3553 *et seq)* and this court has subject matter jurisdiction based on a federal question under 28 U.S.C. §§1331 and 1343(a)(4).

4. This Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. § 2201(a) and further relief pursuant to 28 U.S.C. § 2202.

5. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391, in that acts of discrimination have taken place in this District and Defendant is located in this District.

## PARTIES

6. Plaintiff, Hartman is a fourth year medical student enrolled at the SUNY Stony Brook School of Medicine ("Stony Brook"). He is a resident of Saint James, New York. Hartman intends to take the USMLE Step 2 CS in November 2009. Hartman is a person with a physical disability under the ADA and is entitled to federal protection and appropriate accommodations from Defendant.

7. NBME is a District of Columbia non-profit organization headquartered in Philadelphia, Pennsylvania. The NBME administers the USMLE, a three step examination, the

successful completion of which is required for medical licensure in the United States. Additionally, the level of performance on the USMLE is a primary determining factor for acceptance into the highly competitive residency training programs. Defendant is a private entity that offers examinations related to applications and credentialing to postsecondary education, professional and trade purposes and as such is subject to the non–discrimination and reasonable accommodation requirements of the ADA.

**FACTS**

8.      Hartman is a fourth year medical student who is expected to graduate medical school in December 2009.  Hartman is required to take and pass the USMLE Step 2 CS in order to graduate medical school, fulfill state medical license requirements and begin residency training.  Hartman anticipates taking the USMLE Step 2 CS exam in November to be scored on or before December 31, 2009.  If Hartman does not take the exam with appropriate accommodations and receive a passing grade, it will preclude him from graduating medical school.  Furthermore, graduation from medical school is a prerequisite to begin all medical residency programs.

9.      Hartman is a person with a disability protected under the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq,* as amended, *(*Pub. L. No. 110-325, 122 Stat. 3553 *et seq)*. He is affected by a significant speech dysfluency (stuttering).  Hartman's speech is characterized by severe dysfluencies in the form of extended pauses between syllables, prolongations and repetitions of initial sounds as well as sounds within words.  During periods of elevated stress, these pauses can last up to several minutes between syllables and his dysfluencies become significantly more pronounced.  Hartman also displays accompanying physical concomitants such as jaw muscle tensing, eye blinking, lip pressing, and poor eye contact when speaking.  In a speech/fluency evaluation, Hartman was noted to take a significantly longer amount of time to speak in extended utterances due to halting speech and

occasional sound prolongation.  During a reading task at adult level it took him 53 seconds to read a paragraph aloud versus a normal time of 12-13 seconds.  In other words, it takes Hartman more than four times longer than normal to read a paragraph aloud.

10. Hartman has been affected by this disability nearly his entire life.  Throughout elementary school, he received various forms of speech therapy.  During high school and college speech therapy continued.  He has also received speech therapy while enrolled in medical school.

11. Hartman's speech dysfluency is a condition which substantially limits the major life activities of verbal or oral communication, speech, and interpersonal skills which are necessary to take the USMLE Step 2 CS examination. His debilitating speech impediment makes him feel extremely self-conscious, and as a result, Hartman participates minimally in activities that require speaking.  For example, he avoids speaking in groups and refuses to speak on the telephone with strangers.  Instead, Hartman relies on a teletypewriter device ("TTY")[1] to make telephone calls.  During times of extreme stress, Hartman avoids speaking on the telephone altogether and interacting with his friends.

**The USMLE Step 2 CS Examination**

12. The USMLE Step 2 CS examination sequence is intended to ensure that due attention is devoted to principles of clinical sciences and basic patient-centered skills. This exam requires that the examinee conduct a history and physical examination on a standardized patient. The examinee must demonstrate appropriate interpersonal skills, effective communicative skills, and English speaking skills. This examination requires the examinee to conduct both live patient encounters and telephone patient encounters.

---

[1] A TTY devise or Text Telephone devise is a form of assistive technology often used by individuals with hearing and speech impairments.   The device is connected to the phone lines on both ends and allows the participants to type messages back and forth to one another instead of talking and listening.

13.     The examination is scored as either a pass or fail.  The examinees are scored in three separate subcomponents: integrated clinical encounter ("ICE"), communication and interpersonal skills ("CIS"), and spoken English proficiency ("SEP").  Each of the three subcomponents must be passed in a single administration in order to achieve a passing performance on the USMLE Step 2 CS exam. If an examinee fails one of the subcomponents then the examinee will receive a failed score for the entire exam.

14.     The ICE subcomponent includes an assessment of data gathering and documentation.  The examinee must collect information by history taking and physical examination and complete a patient note summarizing the findings of the patient encounter, diagnostic impression and initial patient work-up. The ICE subcomponent is scored in part by the standardized patient and in part by trained physician raters.

15.     The CIS subcomponent includes an assessment of questioning skills, information sharing skills, professional manner and rapport.  The examinee must demonstrate various communication skills which include: using open-ended questions; transitional statements and facilitating remarks; acknowledging patient concerns; providing counseling; making patient feel comfortable and respected; and encouraging additional questions and discussion. The CIS subcomponent is assessed solely by the standardized patient.

16.     The SEP subcomponent includes an assessment of clarity of spoken English communication within the context of the patient encounter.  The SEP performance is assessed by the standardized patient.

17.     A passing grade is required in order to graduate medical school, obtain state medical licensing and qualify for the National Residency Matching Program (the "match").  The match orchestrates the acceptance of a medical school student into a residency program following graduation from medical school.  Placement in a residency program is a required medical training component for all physicians.

**USMLE Step 2 CS Exam / The First Attempt**

18. During the summer/fall 2008, Hartman applied for accommodations on the USMLE Step 2 CS examination. His initial request submitted in July 2008 requested double extended time, i.e. an additional 15 minutes for each patient encounter portion of the examination. In October 2008 he also applied for an additional accommodation which included use of a Teletypewriter ("TTY") (e.g. Ameriphone Q90D) for use on any telephone patient encounter. Hartman submitted adequate documentation which substantiated that he is a person with a disability under the ADA and entitled to reasonable accommodations.

19. Defendant accepted that Hartman is a person with a disability and entitled to reasonable accommodations under the ADA. Defendant approved Hartman for time and a half i.e. eight minutes additional time for each patient encounter and substitution of a patient encounter for any telephone encounter rather than use of a TTY during the telephone patient encounter.

20. On June 26, 2009, Hartman completed the USMLE Step 2 CS examination with the approved accommodations set forth in the paragraph 19.

21. Hartman received a pass on the integrated clinical encounter (ICE) and the spoken English proficiency (SEP) subcomponents. On the communication and interpersonal skills (CIS) subcomponent, he received a failed outcome. Accordingly, Hartman received a fail for the overall outcome on the USMLE Step 2 CS. According to his performance profile, within the CIS subcomponent, Hartman received below average performances on his Questioning Skills and Information-Sharing Skills, both of which require communication with the standardized patients.

22. Hartman's failed outcome on the USMLE Step 2 CS was a direct and proximate result of his disability coupled with inappropriate accommodations.

**USMLE Step 2 CS Exam / Current Request**

23.     In September 2009, Hartman applied for accommodations in order to take the USMLE Step 2 CS examination a second time. Hartman's application requested the opportunity to utilize a laptop for the purpose of typing questions and responses which an orator would then verbalize to standard patient.[2]

24.     Accompanying Hartman's applications was a report from his speech therapist, Emily McCafferty, who at the time had been treating Hartman for over a year. McCafferty asserted that Harman's speech is characterized by severe dysfluencies in the form of blocks, prolongations, and repetitions of initial sounds as well as sounds within word.  She further commented that the blocks can last several seconds and are often accompanied by secondary characteristics such as jaw tension and blinking.  Moreover, McCafferty stated that during periods of elevated stress (such as during the USMLE exam), there is increased tension of his articulators, which prolongs and worsens Hartman's dysfluencies, making communication more difficult.  Thus, during periods of elevated stress, Hartman's dysfluencies become significantly more pronounced.   McCafferty opined that merely granting extended time will not appropriately accommodate Hartman's significant speech dysfluencies.

25.     By letter dated September 29, 2009, NBME rejected Hartman's request for the accommodation of typing his questions and responses to the patient.  NBME approved an additional accommodation of double time i.e. 15 additional minutes for each patient encounter.

26.     Through follow up phone calls and letters to NBME, Hartman (or persons on his behalf) requested the use of assistive technology such as text to speech software on the USMLE Step 2 CS examination.  Text to speech software enables an individual to type text and the

---

[2]     At the time of this application, Hartman was unfamiliar with various forms of assistive technology (other than TTY) such as text to speech software.  Because Hartman was requesting the use of an orator his request for accommodations also requested that the standard patient rating scales be modified to reflect the use of an orator.

program converts any text into spoken words. Hartman would be able to operate this program through the use of either a laptop computer or iPod with keyboard and speaker attachment.

27. The assistive technology of text to speech software is commonly used by individuals with speech and hearing impairments.

28. The use of text to speech software would not fundamentally alter the USMLE Step 2 CS examination.

29. The use of text to speech software would not give Hartman an unfair advantage over other test takers.

30. By letter dated October 27, 2009, NBME denied Hartman's request for the accommodation of text to speech software on the administration of the USMLE Step 2 CS examination.

31. Hartman has an indisputable speech and oral communications disability that substantially limits his major life activities of verbal or oral communication, speech, and interpersonal skills as compared to most people. Under the ADA, Hartman is entitled to the accommodations and auxiliary aids of additional time for each patient encounter and use of the assistive technology of text to speech software. NBME's refusal to provide the requested reasonable accommodations and auxiliary aids for persons with impaired speaking skills is a violation of Hartman's rights under the ADA.

32. As a direct and proximate result of NBME's violation of the ADA, Hartman will be unable to complete his medical school education and receive consideration for a residency position if he does not successfully complete the USMLE Step 2 CS examination. Furthermore, if he does not receive appropriate and reasonable accommodations and auxiliary aids, he will be placed at a disadvantage of competing for quality residency positions. Hartman's medical career could end if he is unable to pass the USMLE Step 2 CS examination, due to NBME's refusal to provide reasonable and appropriate accommodations.

33. If Hartman does not receive the reasonable accommodations and auxiliary aids on the USMLE Step 2 CS examination, he will be unable to demonstrate his actual knowledge, skills and potential to succeed on this examination and in medical school.

34. Hartman requires the requested accommodations and auxiliary aids on the USMLE Step 2 CS examination not to gain an advantage, but to attempt to level the playing field because Hartman's functional limitations impact his ability to take this examination that non-disabled test takers do not experience.

35. If Hartman does not take the USMLE Step 2 CS examination with appropriate accommodations and have the examination results reported on or before December 31, 2009, he will be irreparably harmed because he will lose the extensive time he has invested in medical school and preparation for the examination; he will be prevented from competing on a level playing field with other students in medical school and he will be prevented from competing on a level playing field in applying for residency programs.

36. Hartman through counsel has notified NBME of its violation of the ADA and requested that they remedy this matter by providing the requested accommodations and auxiliary aids. Hartman through counsel has also advised NBME of his intention to file this litigation if the matter is not remedied.

## FIRST CLAIM

**(Violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*)**

37.   Hartman hereby incorporates by reference paragraphs 1 through 36 of this Complaint as set forth herein.

38.   Hartman is an individual with a disability within the meaning of the ADA, 42 U.S.C. §12102 as amended (Pub. L. No. 110-325, Secs. (4)(a)(4)(C), (4)(a)(4)(E)(i) 122 Stat. 3553, 3555, 3556*)* . Hartman is a qualified individual within the meaning of the ADA in that he meets all the eligibility criteria for taking the USMLE Step 2 CS examination.

39.   Hartman requires reasonable accommodations and auxiliary aids for persons with impaired speaking skills, to participate in a fair, full, and equal basis on the USMLE Step 2 CS examination.  The modifications that Hartman needs would not impose a fundamental alteration nor would it create an unfair advantage for him, but would attempt to level the playing field and allow his aptitude and abilities to be fairly and accurately measured.

40.   Defendant NBME administers the USMLE Step 2 CS examination, an examination related to applications and credentialing for postsecondary education, professional, and trade purposes, within the meaning of the ADA, 42 U.S.C. § 12189.

41.   The ADA, 42 U.S.C. § 12189, requires Defendant NBME to offer these examinations in a manner accessible to persons with disabilities.

42.   The Department of Justice Regulations mandate that a private entity offering examinations modify its examinations as necessary to ensure full and equal access to persons with disabilities, including adaptations of the manner in which the examination is given and/or providing other appropriate auxiliary aids for persons with impaired speaking skills.  28 C.F.R. §§ 36.309(b).

43. The Department of Justice Regulations prohibit Defendant NBME from administering the USMLE Step 2 CS without ensuring that the scores reported "accurately reflect the applicant's aptitude or achievement level or whatever other factor the test purports to measure, rather than reflecting the applicant's [disability]." 28 C.F.R. § 36.309(b)(1)(i).

44. The accommodations and auxiliary aids requested by Hartman do not fundamentally alter the measurement of the skills or the knowledge which the examination is intended to assess. Furthermore, they do not create an unfair advantage for Hartman nor result in an undue burden to Defendant NBME.

45. Defendant NBME has discriminated, and continues to discriminate against Hartman on the basis of his disability by denying him an equal opportunity to demonstrate his aptitude and achievement level on the USMLE Step 2 CS in violation of the ADA, specifically 42 U.S.C. 12182.

46. Defendant NBME's discriminatory policy and practices violate Plaintiff Hartman's rights under the ADA and the regulations promulgated thereunder. Defendant's discriminatory policies and practices include but are not limited to:

   a. Failure to grant accommodations and auxiliary aids for persons with impaired speaking skills when Hartman submitted the requisite documentation and provided documentation supporting the need for the requested accommodations and auxiliary aids.
   b. Failure to give considerable weight to Hartman's evaluators.
   c. Failure to provide a clear explanation for NBME's denial.
   d. Failure modify its examinations as necessary to ensure full and equal access to Hartman, including providing adaptations and appropriate auxiliary aids for his impaired speaking skills.
   e. Failure to conduct a proper review and apply appropriate legal standards to Hartman's request for reasonable accommodations auxiliary aids.

      f.   Failure to engage in good faith in the interactive process to consider and implement effective reasonable accommodations and auxiliary aids to address Hartman's disability.

47.    Hartman will be irreparably harmed if the NBME continues its unlawful refusal to provide him with the reasonable accommodations as requested in that (a) Hartman's medical school career will be placed on hold or terminated because a passing score on the USMLE Step 2 CS is a prerequisite to graduating from medical school; (b) given his history on the prior USMLE Step 2 CS examination, Hartman is justifiably concerned that he will be unable to pass the entire examination without appropriate accommodations and auxiliary aids; (c) Hartman will be delayed or unable to participate in the National Resident Matching Program; (d) Hartman's opportunity to engage in his career choice is effectively on hold or may be terminated until the NBME is compelled to comply with the ADA; (e) requiring Hartman to take the USMLE Step 2 CS examination without appropriate accommodations and auxiliary aids puts him at a distinct disadvantage to his non-disabled peers; and (f) a diminished or failed outcome on the USMLE Step 2 CS examination resulting from failing to provide appropriate accommodations and auxiliary aids, significantly reduces or terminates Hartman's future residency and professional career options. Unless this Court grants injunctive relief prohibiting the continued violation of Hartman's ADA rights and compelling the NBME to provide the requested accommodations and to report the examination results by December 31, 2009 the foregoing irreparable harm will continue.

48.    The NBME will not be harmed if the Court grants the requested injunctive relief. Thus, the balancing of harms favors granting the requested injunctive relief.

49.    The public interest will be serviced by granting the requested injunctive relief. The ADA was enacted to serve the strong public interest to "provide a clear and comprehensive

national mandate for the elimination of discrimination against individuals with disabilities and provide broad coverage." 42 U.S.C §12101, Pub. L. No. 110-325, Sec. 2(a)(1), 122 Stat.3553. The public interest will not be served by allowing NBME to continue its unlawful refusal to provide Hartman with the ADA mandated accommodations and auxiliary aids to which he is entitled.

50. As a direct and proximate result of NBME's violation of the ADA, Hartman has suffered or will suffer substantial injury including but not limited to, lost education and employment opportunities and out-of-pocket pecuniary losses.

51. NBME's conduct constitutes an ongoing and continuous violation of the ADA. Unless enjoined from doing so, Defendant will continue to violate said law. Said conduct, unless enjoined, will continue to inflict injuries for which Hartman has no adequate remedy at law. Consequently, Hartman is entitled to injunctive relief under the ADA, 42 U.S.C. § 12188.

WHEREFORE, Plaintiff requests relief as set forth below.

## SECOND CLAIM

### (Declaratory Relief)

52. Hartman hereby incorporates by reference paragraphs 1 through 51 of this Complaint as set forth herein.

53. A present and actual controversy exists between Plaintiff Hartman and Defendant NBME concerning their rights and respective duties. Hartman contends that NBME violated and continues to violate his rights under the Americans with Disabilities Act as amended, 42 U.S.C. sections 12101, *et seq*. Based upon information and belief, NBME denies these allegations, thus declaratory relief is therefore necessary and appropriate.

54. Hartman seeks a judicial declaration of the rights and duties of the respective parties accordingly.

WHEREFORE, Plaintiff Hartman requests relief as set forth below

**RELIEF REQUESTED**

WHEREFORE, Plaintiff prays for judgment as follows:

1. Preliminary order compelling the NBME, or those acting as agents for or in concert with it, to provide reasonable accommodations to Plaintiff Hartman, by providing him with the reasonable accommodation and auxiliary aids on the administration of the USMLE Step 2 CS examination which shall include: use of computer or electronic device(s) with text to speech software to communicate during patient encounters; an additional 15 minutes (double time) on each patient encounter; face to face encounters instead of a telephone encounter; reporting the grade of the examination on or before December 31, 2009.

2. Make the above order permanent and that such order be made applicable to all USMLE Step 2 CS examinations taken by Hartman.

3. An order granting such other injunctive relief as may be appropriate.

4. An order granting declaratory relief.

5. Award for attorney fees, costs and expenses of suit incurred herein.

6. Award for such other and further relief as the Court may deem just and proper.

Respectfully submitted

Dated: November 2, 2009

By: CW 4713    /s/          .
Charles Weiner, Esquire
PA Attorney I.D. #52926
Counsel for Plaintiff Aaron Hartman
179 North Broad Street
Doylestown, PA 18901
215-348-4283
 (FAX) 215-340-2412
e-mail: charles@charlesweinerlaw.com