UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AARON L. HARTMAN<br>                    Plaintiff<br><br>                v.<br><br>NATIONAL BOARD OF MEDICAL<br>EXAMINERS,<br>                    Defendant<br>_____ | Civil Action  09-5028<br><br>**PLAINTIFF'S MOTION FOR<br>PRELIMINARY<br>INJUNCTION/PERMANENT<br>INJUNCTION** |

## PLAINTIFF'S MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION

Plaintiff, Aaron Hartman ("Hartman") presents herein this Motion for Preliminary

Injunction, Memorandum of Law, Declarations and Exhibits in support thereof and prays as

follows:

1.      Mr. Hartman commenced a civil action ("Complaint") on November 2, 2009,

against the National Board of Medical Examiners ("NBME") for violations of the Americans

with Disabilities Act ("ADA") 42 U.S.C. §12101, et seq., as amended *(*Pub. L. No. 110-325, 122

Stat. 3553 *et seq).*  The Complaint is incorporated herein by reference as if set forth fully herein

at length.

2.      Mr. Hartman is requesting reasonable accommodations and auxiliary aids in

taking the United States Medical Licensing Examination ("USMLE") Step 2 Clinical Skills

("CS") because of his impaired speaking skills.

3.      Mr. Hartman is affected by significant speech dysfluencies (stuttering).  Mr. Hartman's speech is characterized by severe dysfluencies in the form of extended pauses between syllables, prolongations and repetitions of initial sounds as well as sounds within words.

4.      Mr. Hartman's speech dysfluency is a condition which substantially limits the major life activities of verbal or oral communication, speech, and interpersonal skills which are necessary to take the USMLE Step 2 CS examination.

5.      Mr. Hartman pursuant to Fed.R.Civ.P. 65, respectfully moves this Honorable Court to grant a preliminary injunction requiring Defendant NBME to provide Mr. Hartman with the following reasonable accommodations and auxiliary aids for persons with impaired speaking skills on the administration of the USMLE Step 2 CS examination which shall include: (1) use of computer or electronic device(s) with text to speech software to communicate during patient encounters; (2) an additional 15 minutes (double time) on each patient encounter; (3) face to face encounters instead of a telephone encounter; (4) permit Mr. Hartman to complete the USMLE Step 2 CS during the first week of February 2010; (5) reporting the grade of the examination on or before March 1, 2010.

6.      Mr. Hartman is a fourth year medical student who was expected to graduate medical school in December 2009.  Mr. Hartman is required to take and pass the USMLE Step 2 CS in order to graduate medical school, fulfill state medical license requirements and begin residency training.  Mr. Hartman anticipates taking the USMLE Step 2 CS exam in the first week of February 2010 to be scored on or before March 1, 2010.  If Mr. Hartman does not take the exam with appropriate accommodations and receive a passing grade, it will preclude him from graduating medical school.  Furthermore, graduation from medical school is a prerequisite to begin all medical residency programs.  Because of the extreme prejudice and irreparable harm Mr. Hartman will suffer if he does not receive appropriate and effective accommodations and auxiliary aids for persons with impaired speaking skills on the USMLE Step 2 CS, he now seeks

an order from this Court granting his motion to compel the NBME to provide the requested reasonable accommodations auxiliary aids.

      7.      There is no adequate relief available at law.

      8.      In support of this Motion, Mr. Hartman submits the annexed Memorandum of Law; Declarations and Exhibits which are incorporated by reference.

      WHEREFORE, for the reasons stated in the Complaint which are incorporated by reference as if fully set forth herein, along with the annexed Memorandum of Law, Declarations and Exhibits, Aaron Hartman respectfully request that this Court grant his motion for injunctive relief by compelling the NBME to provide the requested reasonable accommodations and auxiliary aids for persons with impaired speaking skills on the USMLE Step 2 CS.

Respectfully submitted

By:_____/S/_____
          Charles Weiner, Esquire
          PA Attorney I.D. #52926
          Counsel for Aaron Hartman
          179 North Broad Street
          Doylestown, PA 18901
          215-348-4283
          (FAX) 215-340-2412
          e-mail: charles@charlesweinerlaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AARON L. HARTMAN<br><br>Plaintiff<br><br><br>v.<br><br><br>NATIONAL BOARD OF MEDICAL EXAMINERS,<br>Defendant<br>_____ | Civil Action  09-5028<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION/PERMANENT INJUNCTION** |

## <u>MEMORANDUM OF LAW</u>

### I.      INTRODUCTION

Plaintiff Aaron Hartman ("Hartman") incorporates by reference, Plaintiff's Motion for Preliminary Injunction as if set forth fully herein at length.  Mr. Hartman has brought an action against the National Board of Medical Examiner ("NBME") for violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*, as amended *(*Pub. L. No. 110-325, 122 Stat. 3553 *et. seq.).*  Mr. Hartman, an individual with a disability, has requested reasonable accommodations and auxiliary aids for persons with speech impairments when taking the United States Medical Licensing Exam (USMLE) Step Two Clinical Skills (CS) examination.  Because Mr. Hartman has substantially impaired speaking skills characterized by severe dysfluencies in the form of extended pauses between syllables, prolongations and repetitions of initial sounds as well as sounds within words, he requires several accommodations on the USMLE Step Two CS examination in order to demonstrate his actual knowledge and ability.

In September 2009, Mr. Hartman applied for accommodations in order to take the USMLE Step 2 CS examination. Mr. Hartman's application requested the opportunity to utilize a

laptop for the purpose of typing questions and responses which an orator would then verbalize to the standardize patient.  Mr. Hartman was previously approved for eight extra minutes (time and a half extra time) for each patient encounter and substitution of a patient encounter for any telephone encounter.  Mr. Hartman subsequently refined his request to include use of assistive technology such as text to speech software to assist or aid him with communicating during the patient encounter portions of the examination.

NBME has acknowledged that Mr. Hartman is a person with a disability by approving certain accommodations.  However, despite documentation from Mr. Hartman's speech therapist describing the nature of his impairment coupled with his demonstrated impaired speaking skills, NBME has refused to approve the appropriate accommodation or auxiliary aid for his impairment, namely text to speech software.  The ADA prohibits entities such as the NBME from discriminating against people with disabilities in the administration of examinations such as the LSAT.  42 U.S.C. §12189.

Because Mr. Hartman will be irreparably harmed if he does not take the USMLE Step 2 CS examination with appropriate accommodations, he seeks an order from the Court granting his motion to compel NBME to provide the requested reasonable accommodations and report the examination results on or before March 1, 2010. Absent this relief Mr. Hartman will lose the extensive time he has invested in medical school and preparation for the examination; he will be prevented from competing on a level playing field with other students in medical school and he will be prevented from competing on a level playing field in applying for residency programs.

## II.    FACTUAL BACKGROUND

Mr. Hartman is affected by significant speech dysfluency (stuttering).  Mr. Hartman's speech is characterized by severe dysfluencies in the form of extended pauses between syllables, prolongations and repetitions of initial sounds as well as sounds within words. See Declaration of Aaron Hartman (Hartman Declaration) ¶ 2 and Declaration of John Tetnowski, Ph.D., CCC-SLP,

BRS/M-FD (Tetnowski Declaration) ¶ 11.  Due to this disability which substantially limits the major life activities of verbal or oral communication, speech and interpersonal skills, he requires various accommodations on the USMLE Step 2 CS examination.  NBME has already determined that Mr. Hartman is a person with a disability under the ADA and they have adapted the USMLE Step 2 CS examination to provide several accommodations which includes double time for each patient encounter and face to face patient encounters and examinations instead of a telephone encounter.  To appropriately address Mr. Hartman's profound speech impairment, he seeks an additional accommodation or auxiliary aid which includes use of an electronic device (e.g. laptop computer or iPod) equipped with text to voice software.  Despite Mr. Hartman's obvious impairment which they have observed first hand coupled with documentation supporting the need for accommodation beyond extended time, NBME has denied Mr. Hartman's requests without providing an appropriate reason for doing so.

   **A.**  **Hartman's Disability**

   Mr. Hartman is a fourth year medical student who was expected to graduate medical school in December 2009. See Declaration of Aaron Hartman ("Hartman Declaration") ¶ 1.  He is affected by a significant speech dysfluency (stuttering).  Mr. Hartman's speech is characterized by severe dysfluencies in the form of extended pauses between syllables, prolongations and repetitions of initial sounds as well as sounds within words.  During periods of elevated stress, these pauses can last up to several minutes between syllables and his dysfluencies become significantly more pronounced.  Mr. Hartman also displays accompanying physical concomitants such as jaw muscle tensing, eye blinking, lip pressing, and poor eye contact when speaking. See Hartman Declaration ¶¶ 2-3 and Report dated September 17, 2009 of Emily McCafferty, M.S., CCC/SLP (McCafferty Report) contained in Exhibit 3.  This disability has substantially impacted verbal and oral communications, speech and interpersonal skills. See Hartman Declaration ¶ ¶ 4-6 and McCafferty Report (Exhibit 3).

Mr. Hartman's speech impairment is a condition which has affected him since childhood. Since the age of five, Mr. Hartman has been impaired with severe stuttering.  Throughout elementary and high school, Mr. Hartman received various episodes of speech therapy to help ameliorate the affects of his dysfluent speech. He has continued to receive speech therapy in college and again in medical school.  See Hartman Declaration ¶ 4. During 2009, Mr. Hartman has received speech therapy sessions from Emily McCafferty, M.S., CCC-CLP. Hartman Declaration ¶ 13.  While speech therapy has provided Mr. Hartman with some compensatory strategies, he still experiences sever dysfluencies, pauses and prolongations in speech particularly during episodes of elevated stress.

Mr. Hartman's speech impairment has resulted in several limitations in various aspects of his life.  As a result of his speech impediment, Mr. Hartman is extremely self conscious and minimally participates or avoids activities that require speaking.  He often withdraws from social interaction even among friends.  To communicate on the telephone he relies on a teletypewriter device ("TTY").[1]   When a TTY is not available, Mr. Hartman avoids speaking on the phone. See, Hartman Declaration ¶ 5 .

Despite his impairment, Mr. Hartman has achieved considerable academic success.  In college at the State University of New York (SUNY) Genesco he graduated summa cum laude. Furthermore, he was accepted into medical school and has successfully completed three years of medical school and has nearly completed all the requirements to graduate medical school. Inasmuch as Mr. Hartman was never required to demonstrate speech or communicative skills in an academic setting he was able to achieve considerable academic success without accommodations or auxiliary aids for persons with impaired speaking skills. See Hartman

---

[1]      A TTY devise or Text Telephone devise is a form of assistive technology often used by individuals with hearing and speech impairments.   The device is connected to the phone lines on both ends and allows the participants to type messages back and forth to one another instead of talking and listening.

Declaration ¶ 7-9.  However, in that the USMLE Step 2 CS examination requires that one speak and communicate with standard patients, accommodations and auxiliary aids are necessary to level the playing field and not assess Mr. Hartman based on his disability.

      **B.**        **The USMLE Step 2 Clinical Skills Examination**

The USMLE is a three step examination, the successful completion of which is required for medical licensure in the United States.  See "2009 Step 2 Clinical Skills Content Description and General Information" p. 3 - pertinent portions of which are attached as Exhibit 1.[2] Additionally, the level of performance on the USMLE is a primary determining factor for acceptance into the highly competitive residency training programs.

The USMLE Step 2 CS examination sequence is intended to ensure that due attention is devoted to principles of clinical sciences and basic patient-centered skills. This exam requires that the examinee conduct a history and physical examination on a standardized patient.  The examinee must demonstrate appropriate interpersonal skills, effective communicative skills, and English speaking skills. The examination under standard conditions entails twelve patient encounters.  The examinee under standard conditions is given fifteen minutes for each patient encounter followed by a ten minute period for taking notes. This examination requires the examinee to conduct both live patient encounters and telephone patient encounters.    While the live patient encounters require that the examinee conduct a physical examination, no physical examination is required for the telephone encounter.  Under standard conditions, the USMLE Step 2 CS examination lasts eight hours including two breaks totaling 45 minutes.  See Exhibit 1 – pp. 6-8.

The Step 2 CS is intended to determine whether physicians seeking an initial license to practice medicine in the United States, regardless of country of origin, can communicate

---

[2]      The USMLE is a joint program of the Federation of State Medical Boards of the United States (FSMB) and the National Board of Medical Examiners (NBME).  Exhibit 1 is a document made available through the USMLE. FSMB and NBME holds the copyright to Exhibit 1.

effectively with patients. The examination is scored as either a pass or fail.  The examinees are scored in three separate subcomponents: integrated clinical encounter ("ICE"), communication and interpersonal skills ("CIS"), and spoken English proficiency ("SEP").  Each of the three subcomponents must be passed in a single administration in order to achieve a passing performance on the USMLE Step 2 CS exam. If an examinee fails one of the subcomponents then the examinee will receive a failed score for the entire exam. See Exhibit 1 p. 10.

The ICE subcomponent includes an assessment of data gathering and documentation. The examinee must collect information by history taking and physical examination and complete a patient note summarizing the findings of the patient encounter, diagnostic impression and initial patient work-up. The ICE subcomponent is scored in part by the standardized patient and in part by trained physician raters. The CIS subcomponent includes an assessment of questioning skills, information sharing skills, professional manner and rapport.  The examinee must demonstrate various communication skills which include: using open-ended questions; transitional statements and facilitating remarks; acknowledging patient concerns; providing counseling; making patient feel comfortable and respected; and encouraging additional questions and discussion. The CIS subcomponent is assessed solely by the standardized patient. The SEP subcomponent includes an assessment of clarity of spoken English communication within the context of the patient encounter.  The SEP performance is assessed by the standardized patient. See Exhibit 2 – pp. 10-11.  A passing grade is required in order to graduate medical school, obtain state medical licensing and qualify for the National Residency Matching Program (the "match"). Hartman Declaration ¶ 12.  The match orchestrates the acceptance of a medical school student into a residency program following graduation from medical school.  Placement in a residency program is a required medical training component for all physicians.  Hartman Declaration ¶ 12.

### C.      The June 2009 Examination

During the summer/fall 2008, Mr. Hartman applied for accommodations on the USMLE Step 2 CS examination.  Accompanying its application material, NBME also provides instructions for requesting accommodations and lists document which NBME requires to support a request for accommodations. (See Exhibit 2- p. 1)  His initial request submitted in July 2008 requested double extended time, i.e. an additional 15 minutes for each patient encounter portion of the examination.  Mr. Hartman submitted adequate documentation which substantiated that he is a person with a disability under the ADA and entitled to reasonable accommodations.  Submitted with his application for accommodations, Mr. Hartman included (1) the Applicant Request for Test Accommodations (Exhibit 2—pp.2-5); Certification(s) of Prior Test Accommodations (Exhibit 2 – pp. 6-7); Personal Statement (Exhibit 2 – p. 8); Leslie Oldemeyer, MS CCC-SLP, Speech Pathology report dated 5-14-2007 (Exhibit 2 – pp. 9-11).  See Hartman Declaration ¶ 14 and Exhibit 2.

The documentation submitted to the NBME supported that Mr. Hartman is a person with a disability and required accommodations on the USMLE Step 2 CS examination.  Mr. Hartman's documentation reflected that during medical school on clinical type examinations he was given double time to complete the history and physical on a simulated patient.  Hartman Declaration ¶¶ 9, 14, Exhibit 2 p. 6.  The report from the speech pathologist Leslie Oldemeyer reflected that, "…physical concomitants included facial grimaces such as jaw muscles tensing and lip pressing as well as poor eye contact."  Oldemeyer also reported "…sound prolongation, part word repetitions and interjections in his dysfluent events."  On an oral reading test, Mr. Hartman read and articulated more than four times slower than the typical adult, having taken 53 seconds to read a short passage aloud compared to 12 -13 seconds for the typical adult.  (see Exhibit 2 – pp. 9-11)

In October 2008 he also applied for an additional accommodations which included use of a Teletypewriter ("TTY") (e.g. Ameriphone Q90D) for use on any telephone patient encounter. See Hartman Declaration ¶ 15.  See Exhibit 3.  With this application, he submitted the following: (1) Cover letter (Exhibit 3 – p.1); (2) the Applicant Request for Test Accommodations (Exhibit 3—pp.3-6); Emily McCafferty, M.S., CCC-CLP letter (Exhibit 3 – p. 7).  See Hartman Declaration ¶ 15 and Exhibit 3.  The report from Ms. McCafferty who at the time had been providing speech therapy for several months, stated that Mr. Hartman "…experiences high level of dysfluencies (including sound blocks, prolongations and repetitions) during conversations….Throughout the course of several phone conversations with [Hartman], he has demonstrated sound blocks lasting several seconds."  Ms. McCafferty recommended adaptations of the examination involving telephone conversations. (See Exhibit 3 p. 7).

NBME did not provide the accommodations requested by Mr. Hartman.  Rather, NBME provided extended time of only time and a half for each patient encounter.  Furthermore, rather than allow Mr. Hartman to utilize an auxiliary aid such as a TTY for the telephone encounter, a live patient encounter was substituted for the telephone encounter(s).[3] Hartman Declaration ¶ 16.

On June 26, 2009, Mr. Hartman completed the USMLE Step 2 CS examination utilizing the accommodation for which he was approved.  Mr. Hartman received a pass on the integrated clinical encounter (ICE) and the spoken English proficiency (SEP) subcomponents.  On the communication and interpersonal skills (CIS) subcomponent, he received a failed outcome. Accordingly, Mr. Hartman received a fail for the overall outcome on the USMLE Step 2 CS. A copy of Mr. Hartman's June 26, 2009 USMLE Step 2 CS Score Report is attached hereto as Exhibit 4.  According to his performance profile, within the CIS subcomponent, Mr. Hartman

---

[3]        NBME's modification wherein it substituted a live patient encounter in place of a telephone patient encounter, ostensibly placed a greater burden upon Hartman in that live patient encounters entail a physical examination whereas  no physical examination is required in a telephone encounter.  See Exhibit 1 pp. 7-8.

received below average performances on his Questioning Skills and Information-Sharing Skills, both of which require communication with the standardized patients.

Mr. Hartman's failed outcome on the USMLE Step 2 CS was a direct and proximate result of his disability coupled with inappropriate accommodations. Throughout the examination, Mr. Hartman encountered difficulties communicating which were due to his disability.  Hartman Declaration ¶ 18. For example, as a proximate result of his disfluencies and physical concomitants, Mr. Hartman was substantially impaired in his ability to ask questions, respond to patients' inquiries, establish eye contact, and communicate freely with standardized patient. Even in the areas which involved communicating with the standard patient where Mr. Hartman received passing scores (e.g. data gathering, professional manner and rapport and spoken English proficiency) his score reflect his achievement level.  Rather, because of his speaking impairment, his scores (even passing scores) reflect his disability.  Hartman Declaration  ¶ 20.

### D.    Second Application for Accommodations

In September 2009, Mr. Hartman applied for accommodations in order to take the USMLE Step 2 CS examination a second time. Mr. Hartman's application requested the opportunity to utilize a laptop for the purpose of typing questions and responses which an orator would then verbalize to standard patient.[4]  A copy of Mr. Hartman's application and supporting documents are collectively attached hereto as Exhibit 5.  Mr. Hartman's application included a report from his speech therapist, Emily McCafferty, who at the time had been treating Mr. Hartman for over a year. McCafferty asserted that Mr. Hartman's speech is characterized by severe dysfluencies in the form of blocks, prolongations, and repetitions of initial sounds as well as sounds within words.  She further commented that the blocks can last several seconds and are often accompanied by secondary characteristics such as jaw tension and blinking.  Moreover,

---

[4]       At the time of this application, Hartman was unfamiliar with various forms of assistive technology (other than TTY) such as text to speech software.  Because Hartman was requesting the use of an orator his request for accommodations also requested that the standard patient rating scales be modified to reflect the use of an orator.

McCafferty stated that during periods of elevated stress (such as during the USMLE exam), there is increased tension of his articulators, which prolongs and worsens Mr. Hartman's dysfluencies, making communication more difficult.  Thus, during periods of elevated stress, Mr. Hartman's dysfluencies become significantly more pronounced.   McCafferty opined that merely granting extended time will not appropriately accommodate Mr. Hartman's significant speech dysfluencies. Exhibit 5, pp. 7-8.

Mr. Hartman's request for an auxiliary aids for his speech impairment on the USMLE Step 2 CS; however, was rejected by the NBME.  By letter dated September 29, 2009, NBME rejected Mr. Hartman's request for the accommodation of typing his questions and responses to the patient.  NBME approved an additional accommodation of double time i.e. 15 additional minutes for each patient encounter.  A copy of NBME's September 29, 2009 letter is attached as Exhibit 6.  Hartman Declaration ¶ 22.

Through follow up phone calls and letters to NBME, Mr. Hartman (or persons on his behalf) requested the use of assistive technology such as use of an orator or use of text to speech software on the USMLE Step 2 CS examination.  By letter dated October 5, 2009, Mr. Hartman reiterated his request for an auxiliary aid for his impaired speaking skills.  The October 5, 2009 letter is attached as Exhibit 8. Hartman Declaration ¶ ¶ 23-25.  Furthermore, in telephone conferences between Mr. Hartman, his father (Gerald Hartman, M.D.) and NBME management, Mr. Hartman requested the use of assistive technology to address his impaired speech on the USMLE Step 2 CS. See, Hartman Declaration ¶ 23.[5]  NBME rejected his request to use an orator.  In its letter dated October 13, 2009, NBME rejected Mr. Hartman's request for an orator. Hartman Declaration¶ 26.  The October 13, 2009 letter is attached as Exhibit 9.  Through

---

[5]      Mr. Hartman enlisted the aid of his father to speak with NBME personnel because he needed assistance with speaking to individuals and on several occasions NBME staff hung up on Mr. Hartman.  This occur presumably because, Mr. Hartman was unable to utter a word or sound while on the phone and NBME staff  presumably did not realize he was still on the phone.  See e.g. Hartman Declaration ¶¶ 23-24. Exhibit 7.

counsel, NBME was request to approve use of text to speech software on the USMLE Step 2 CS exam as an auxiliary aid for Mr. Hartman's impaired speech in addition to the previously approved accommodations. Hartman Declaration ¶ 27. See letter dated October 16, 2009 attached as Exhibit 10.  By letter dated October 27, 2009, NBME rejected the request for text to speech software, merely noting that "text to speech software rather than speaking to the standardized patients is not an appropriate modification of your Step 2 CS test administration." Hartman Declaration ¶ 28. A copy of the October 27, 2009 letter is attached as Exhibit 11.

Counsel on behalf of Mr. Hartman placed NBME on notice of its violation of the ADA and made reasonable attempts to resolve this matter prior to filing suit.  See Counsel's letter dated October 29, 2009 attached as Exhibit 12.  By letter dated November 2, 2009, NBME maintained its discriminatory denial, merely stating that its rationale was "exhaustively set out in prior correspondence, including the letter [to Mr. Hartman] from Elizabeth Azari, Associate Vice President, Examinee Support Services, dated October 13, 2009 (Exhibit 9) [denying Mr. Hartman's request to use an orator].  A copy of the November 2, 2009 letter is attached as Exhibit 13.

### E.  December 2009 Evaluation – Dr. John Tetnowski

On or about December 7, 2009, Mr. Hartman received a thorough speech evaluation conducted by Dr. John Tetnowski to further assess his ability to communicate on the USMLE Step 2 CS examination. See Declaration of John A. Tetnowski, Ph.D., CCC-SLP, BRS/M-FD (Tetnowski Declaration) ¶ 7. Dr. Tetnowski is a Professor in Communicative Disorders at the University of Louisiana.  He holds a Masters in Communicative Disorder and a Ph.D. in Audiology and Speech-Language Pathology.  He has been issued a Certificate of Clinical Competence (CCC) by the American Speech-Language-Hearing Association; received designation as Board Recognized Fluency Specialist and Fluency Mentor by the Specialty Board on Fluency Disorders.  He has published articles and delivered presentations on over 150

occassions, primarily on the topic of stuttering. Tetnowski Declaration ¶¶ 1-4. See also Curriculum Vitae of John A. Tetnowski (Tetnowski CV) attached as Exhibit 14.

Dr. Tetnowski evaluated Mr. Hartman for approximately six hours.  The evaluation consisted of a review of his prior speech evaluation records submitted to NBME, a history taken from Mr. Hartman, clinical observations, standardized testing and observations in non-clinical settings.  Dr. Tetnowski summarized his findings and recommendations in a report which is attached as Exhibit 15.  See Tetnowski Declaration ¶¶ 8-9.

At the outset Dr. Tetnowski recognized that Mr. Hartman stuttered on almost every other word and many episodes of stuttering lasted over two minutes.  His speech is marked by long blocks (i.e. attempts to talk where sound or words are not produced) many of which last for considerable periods of time, often over one minute and sometimes over two minutes.  Consequently, Mr. Hartman is greatly handicapped by his stuttering in every setting of verbal communication.  Tetnowski Declaration ¶ 11, Exhibit 15.

The assessment of stuttering entails data collection of Mr. Hartman's communication under many different levels of linguistic and environmental complexity.  From each sample, a percentage of stuttering syllables (%SS) was calculated.  The measures assessed by Dr. Tetnowski indentifies part-word repetitions (e.g. d-d-d-dog), single syllable word repetitions (e.g. by-by-by-by the window), prolongations (e.g. wwwwwwwag) and blocks.  Tetnowski Declaration ¶ 12, Exhibit 15.  A chart contained in Dr. Tetnowski's report (Exhibit 15-p. 3) illustrates the severity of Mr. Hartman's impairment.  Of the twelve tasks included in the assessment[6], Mr. Hartman show significant stuttering across all tasks with stuttering ranging from 26% to 70%  (over 3% or indicative of stuttering).  In half the tasks measured, Mr. Hartman

---

[6]        Tasks included: 1 syllable word repetition, name and reading (three separate tasks);  Multi-syllable word repetition, name and reading (three tasks); phrase repetition; sentence reading; sentence formulation; reading a short paragraph; dialogue with examiner; and monologue with clinician.

stuttering range exceeded 50% and consisted of part-word repetitions and blocks.  Tetnowski Declaration ¶ 13.

Dr. Tetnowski also administered additional measures to assess the severity of Mr. Hartman's stuttering.  Dr. Tetnowski administered a standardized test of speech naturalness both reading tasks and non-reading dialogue.  The measure is on a 9 point scale with a score of 1 being "highly natural" to a score of 9 which is "highly unnatural".  Mr. Hartman was rated a 9 (i.e. highly unnatural) for both the reading and non-reading dialogue due to the excessive amount of stuttering and the severity (length of the stuttering moments). Mr. Hartman rate of speech was also evaluated during dialogue.  Dr. Tetnowski measured several samples during dialogue.  Mr. Hartman's average speaking rate was measured at 30 syllables per minute as compared to normative data which reflects that adults speak at a rate of 255 syllables per minute.  Dr. Tetnowski concluded that Mr. Hartman's rate of speech which is over eight times slower than expected is greatly affected by stuttering. Tetnowski Declaration ¶¶ 14-15.

Dr. Tetnowski also induced various fluency improvement techniques and devices to assess whether stuttering can be reduced and to assist in identifying potential auxiliary aids to utilize on the USMLE Step 2 CS.  On most tasks assessed inducing various fluency improvement techniques, Mr. Hartman showed only marginal improvement and still remained with significant stuttering.  Dr. Tetnowski concluded that fluency induction revealed that Mr. Hartman could not easily modify his speech.   The only technique deemed successful was choral reading.  Choral reading entails another person reading in unison with Mr. Hartman.  Dr. Tetnowski recognized that choral reading is not a viable option for the USMLE Step 2 CS inasmuch as it requires the assistance of another person and involves speech from reading out loud as opposed to spontaneous speech or dialogue. Tetnowski Declaration ¶¶ 16-17.

Based on Dr. Tetnowski's assessments and observations, he concludes that Mr. Hartman's stuttering is very severe in nature.  Dr. Tetnowksi recommends that Mr. Hartman be

allowed to use a text-to-speech program with a portable devise to minimize the handicapping aspect of his stuttering while taking the USMLE Step 2 CS.  He further recommends additional time be allotted and that Mr. Hartman should be encouraged to use verbal expression whenever possible and utilize text-to-speech as a supplemental tool when he has a severe block in speech. Dr. Tetnowski further notes that this auxiliary is an appropriate accommodation while not giving him any advantage over other examinees.  Moreover, based on a description of the USMLE Step 2 CS available to the public, Dr. Tetnowski concluded that use of a text-to-speech program as he has recommend, would not alter the examination.  He noted that text-to-speech does not appear to alter the exam any differently the use of sign language for examinees that is hearing and/or speech impaired.  Tetnowski Declaration ¶¶ 18-20.

## III.    ARGUMENT

### A.    Plaintiff Meets the Standards for Preliminary Injunction

The ADA authorizes injunctive relief as appropriate to remedy acts of discrimination against persons with disabilities.  See 42 U.S.C. §12188(a)(1). The Court considers four factors when deciding to grant preliminary injunctions.  These factors include: (1) the movant's likelihood of success on the merits; (2) the potential for irreparable harm, (3) a balancing of the relevant equities; and (4) whether the public interest favors such relief. *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, 342 F.3d 191, 196 (3d Cir. 2003); *Crissman v. Dover Downs Entertainment Inc.*, 239 F.3d 357, 364 (3d. Cir. 2001).  No one element is determinative of the outcome and the Court must engage in a balance of all the elements. *Constructors Association of Western Pa. v. Kreps*, 573 F.2d 811, 815 (3d Cir.1978). As will be discussed below, Plaintiff satisfies all four factors.

**B.**     <u>**Plaintiff has a Reasonable Likelihood of Success on the Merits**</u>

In order to meet its burden on a on a preliminary injunction, Mr. Hartman need only demonstrate that there is reasonable probability that he will succeed on the merits.  See *Institute for Motivational Living v. Sylvan Learning Center,* 2008 U.S. Dist. Lexis 9631 (W.D. Pa. February 7, 2008). (quoting *Oburn v. Shapp*, 521 F.2d 142, 148 (3d Cir. 1975) "It is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking [injunctive] relief to make a [p]rima facie case showing a reasonable probability that it will prevail on the merits.")

The ADA requires private entities that administer standardized examinations do so in a "place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. §12189.  There is no dispute that the NBME administers the USMLE Step 2 CS, an examination related to applications and credentialing for postsecondary education, professional, and trade purposes, within the meaning of the ADA, 42 U.S.C. § 12189 and is accordingly subject to the reasonable accommodations requirements set forth in the ADA.  See Defendant's Answer to Plaintiff's Complaint ¶ 7.  The purpose of the ADA is to guarantee that those with disabilities are not disadvantaged and "to place those with disabilities on equal footing" with others.  *Rush v. National Board of Medical Examiners*, 268 F.Supp. 2d 673 (N.D. Texas 2003); *Agranoff v. Law School Admission Council*, 97 F.Supp.2d. 86 (D. Mass 1999). The regulations implemented in accordance with the ADA provides that an examination is administered, "to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual or speaking skills…."  28 C.F.R. §36.309(b)(1)(i). Regulations further mandates that a private entity offering examinations provide appropriate auxiliary aids for persons with impaired speaking skills, unless that private entity can demonstrate that offering a particular auxiliary aid would fundamentally alter the measurement of the skills or knowledge the examination is intended to test or would result in an

undue burden.  28 C.F.R. §§ 36.309(b)(iii)(3). In this matter, Mr. Hartman is requesting use of a portable electronic device (e.g. laptop) and a text-to-speech program (e.g. NextUp Talker) as an auxiliary aid to accommodate for his very severe stuttering.  Such an entity engages in an impermissible act of discrimination when it fails to make "reasonable accommodations to known physical or mental limitations" in connection with testing.  42 U.S.C. §12112(b)(5)(A).

In determining whether a violation of the ADA has taken place in the context of testing accommodations, the plaintiff must show, "(1) that [he] is disabled; (2) that [his] requests for accommodations are reasonable, and (3) that those requests have been denied." *D'Amico v. New York State Bd. Of Law Examiners,* 813 F. Supp. 217, 221 (W.D.N.Y. 1993). See also. *Ware v. Wyoming Bd. Of Law Examiners,* 973 F.Supp. 1339, 1356 (D. Wyo 1997), *aff'd* 161 F.3d 19 (10th Cir. 1998)(citing *D'Amico*); *Agranoff v. Law School Admission Council, Inc*., 97 F.Supp.2d 86, 87 (D. Mass. 1999) (citing *D'Amico).*  As supported by the facts below, Plaintiff satisfies factor two below and no dispute exists concerning the first and third factors.

There is no dispute that Mr. Hartman is a person with a disability under the ADA and entitled to accommodations. This factor is established by the reports of Leslie Oldemeyer, MS and Emily McCafferty, M.S., CCC/SLP (see Exhibits 2, pp. 9-11  and 5, pp. 7-8 respectively). The nature and extent of his disability is further confirmed in Dr. Tetnowski's report. See Exhibit 15.  Additionally, Defendant has constructively admitted that Mr. Hartman has a disability. See Defendant's Answer to Plaintiff's Complaint ¶¶ 9 and 38.  NBME has in fact granted Mr. Hartman several accommodations to address his disability.  Defendant's Answer to Plaintiff's Complaint ¶¶ 18, 19, 25 and 38.  Furthermore, there is also no dispute that Mr. Hartman's request for text-to-speech software has been denied.  Hartman Declaration ¶¶ 28, Exhibit 11. (NBME wrote, "Your request to type your questions responses using text to speech software rather than speaking to the standardized patients is not an appropriate modification of your Step 2 CS test administration." See Exhibit 11).  Accordingly, the determination of whether Plaintiff can show a reasonable likelihood of success on the merits, this Court need only determine whether Mr. Hartman's request to use text-to-speech is reasonable.

### 1.     Hartman Is A Person With A Disability

While it is submitted that Defendant has conceded that Mr. Hartman is a person with a disability, in the event that this issue becomes contested the analysis establishing Mr. Hartman's status as a person with a disability under the ADA shall be reviewed herein.

Congress enacted the ADA Amendments Act of 2008 (effective January 1, 2009), in an effort to reinstate "a broad scope of protection to be available under the ADA" for persons with disabilities. (See, Pub. L. No. 110-325 Sec. 2(b)(1), 122 Stat. 3553, 3554). In the "Findings and Purposes" section, Congress noted that "the question of whether an individual's impairment is a disability under the Americans with Disabilities Act (ADA) should not demand extensive analysis." (See Pub. L. No. 110-325 Sec. 2(b)(5), 122 Stat. 3553, 3554). Rather, "the primary object of attention . . . should be whether entities covered under the ADA have complied with their obligations."( Pub. L. No. 110-325 Sec. 2(b)(5), 122 Stat. 3553, 3554).  Accordingly, in the amendments to the ADA, Congress directed the courts to interpret disability in a more inclusive manner.  *See, Jenkins v. National Board of Medical Examiners*, 2009 U.S. App. LEXIS 2660(6th Cir., February 11, 2009).

An individual is disabled within the meaning of the ADA, if that individual is affected by "a physical or mental impairment that substantially limits one or more of the major life activities of such individual.  42 U.S.C. §12102(1)(A). However, under the ADA, Congress stated that the "definition … shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of the Act." 42 U.S.C. §12102(4)(A). [7]  The amendments have clarified "substantially limits" as "[a]n impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability." 42 U.S.C. §12102(4)(C).[8]  Furthermore, Congress specified that "a determination of

---

[7]     Pub. L. No. 110-325 Sec. (4)(a)(4)(C), 122 Stat. 3553, 3555.
[8]     Pub. L. No. 110-325, Sec. 4(a)(4)(C), 122 Stat. 3553, 3556.

whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures."42 U.S.C. §12102(4)(E)(i). [9]

The term "physical or mental impairment" includes "…contagious and non-contagious diseases and conditions as orthopedic, visual, speech and hearing impairments…" 36 C.F.R.§104(1)(iii).  Accordingly, a speech impairment is expressly identified as a physical or mental impairment.  Similarly, the term "major life activity" includes, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking…" 42 U.S.C. §12102(2)(A).   The term substantially limits means that the individual's important life activities are restricted as to the condition, manner and duration under which they can perform in comparison to most people. *Emory v. Astrazeneca Pharmaceuticals LP,* 401 F.3d 174, 179-180 (3d Cir. 2005).  Dr. Tetnowski unequivocally establishes that Mr. Hartman's speech is very severely impaired by stuttering and that his speech fluency is more than eight times slower than the average adult. See Tetnowski Declaration and Exhibit 15.  Moreover, Defendant's conduct in approving accommodations on the USMLE Step 2 CS coupled with their admissions in their Answer to the Complaint further confirms Mr. Hartman's status as a person with a disability under the ADA.

### 2.     Hartman's Request For Accommodations Is Reasonable

There should be no dispute that the second element has been met.  The enabling regulations provide in pertinent part:

> (2) Required modifications to an examination may include changes in the length of time permitted for completion of the examination and adaptation of the manner in which the examination is given.

> (3) A private entity offering an examination covered by this section shall provide appropriate auxiliary aids for persons with impaired sensory, manual, or speaking skills, unless that private entity can demonstrate that offering a particular auxiliary aid would fundamentally alter the measurement of the skills or knowledge the

---

[9]     Pub. L. No. 110-325, Sec. 4(a)(4)(E)(i), 122 Stat. 3553, 3556.

> examination is intended to test or would result in an undue burden.
> Auxiliary aids and services required by this section may include
> taped examinations, interpreters or other effective methods of
> making orally delivered materials available to individuals with
> hearing impairments, Brailled or large print examinations and
> answer sheets or qualified readers for individuals with visual
> impairments or learning disabilities, transcribers for individuals
> with manual impairments, and other similar services and actions.

28 C.F.R. §§36.309(b)(2) and (3).  With respect to Mr. Hartman's request for double time for

each patient encounter and substitution of a live patient encounter for telephone encounter(s),

these accommodations have already been approved by NBME prior to filing suit.  Accordingly,

there is no contest to these accommodations.

Mr. Hartman's request for use of a text-to-speech program has been contested.

Determination of whether a modification is "'reasonable' involves a fact-specific, case-by-case

inquiry that considers, among other factors, the effectiveness of the modification in light of the

nature of the disability in question and the cost to the organization that would implement it."

*Bowers v. NCAA,* 118 F.Supp.2d 494, 521 (D.N.J. 2000); *Staron v. McDonald's Corp.*, 51 F.3d

353, 356 (2d Cir. 1995) (citing *D'Amico v. New York State Bd. Of Law Examiners*, 813 F.Supp.

217, 221-22 (W.D.N.Y., 1993)).  Furthermore, a text-to-speech program is an auxiliary aid for

persons with impaired speaking skills which are also covered under this regulation. Examples of

auxiliary aids mentioned in the regulations include: qualified interpreters, notetakers, computer

aided transcription services, assisted listening devices and telecommunication devices for

persons (TDD).  See 28 C.F.R. §36.303(b).  While text-to-speech is not specifically identified as

an example it is clearly an effective aid for individuals with impaired speaking skills.

Mr. Hartman's evaluator has recommended use of a text-to-speech program as a

reasonable accommodation.  Dr. Tetnowski assessed Mr. Hartman for techniques and adaptations

to reduce the level of his handicap.  Based on his assessment and review of the description of the

USMLE Step 2CS, he concluded that access to a text-to-speech program is an appropriate

accommodation particularly when Mr. Hartman experiences a sever block in speech. Tetnowski Declaration ¶¶ 16-20.  Inasmuch as the determination concerning the need for accommodations is principally a medical issue, the opinions of Mr. Hartman's evaluator "must be given great weight." *D'Amico,* 813 F.Supp. at 222.  This is particularly true where there is no competent evaluation providing contrary opinion, and Dr. Tetnowski's opinion does not appear on its face to be outrageous. *see D'Amico,* 813 F.Supp. at 223. Furthermore, Title II which contains similar provisions as Title III concerning reasonable accommodation, regulation provides when determining what type of auxiliary aid is necessary, "public entity shall give primary consideration to the request of the individual with disabilities." 28 C.F.R. §35.160(b)(2).  See also, *Root v. Georgia State Bd. of Veterinary Medicine*, 114 F.Supp. 2d 1324 (N.D. GA 2000).

### 3.    Use of Text-To-Speech Program Does Not Fundamentally Alter The Exam

It is anticipated that NBME will assert that Mr. Hartman's use of a text-to-speech program fundamentally alters the measurement of the skills or knowledge the USMLE Step 2 CS is intended to test.  NBME, however, is unable to sustain its burden of proof to establish that use of a text-to speech program creates a fundamental alteration.

The plaintiff is required to establish a prima facie showing of discrimination, including the burden of articulating reasonable accommodations that the defendant can make in order to comply with the ADA.[10]  See. *D'Amico v. New York State Bd. Of Law Examiners,* 813 F. Supp. 217, 221 (W.D.N.Y. 1993). See also. *Ware v. Wyoming Bd. Of Law Examiners,* 973 F.Supp. 1339, 1356 (D. Wyo 1997).  The ADA contemplates and interactive process between the parties to establish reasonable accommodations.  Once a prima facie showing is established, the burden shifts to defendant to make reasonable accommodations, unless defendant can prove that the

---

[10]    As noted above a prima facie showing requires that plaintiff must show, (1) that s/he is disabled; (2) that his/her requests for accommodations are reasonable, and (3) that those requests have been denied.

accommodation creates a fundamental alteration. *Liberty Resources v. Philadelphia Housing Authority*, 528 F.Supp. 2d 553, 565 (E.D. PA 2007)[11]; citing *Frederick L. v. Department of Public Welfare of Com. of Pennsylvania,* 364 F.3d 487, 492 n.4 (3d Cir. 2004); *Nathanson v. Medical College of Pennsylvania,* 926 F.2d 1368, 1384 (3d Cir. 1991). Defendant has not in any documentation[12] or its Answer to the Complaint stated any reason or explanation for its position that the use of text-to-speech fundamentally alters the USMLE Step 2 CS.

Utilization of text-to-speech software in the manner proposed by Mr. Hartman does not fundamentally alter the USMLE Step 2 CS. First, it cannot be asserted with credibility that this accommodation provides any advantage over non-disabled examinees. On its face, text-to-speech is slower than ordinary adult speech and because it is a computer generated voice it tends to be monotone. Furthermore, Dr. Tetnowski notes that text-to-speech does not remove Mr. Hartman's disadvantage; rather, it provides an improvement over his direct speech. Tetnowski Declaration ¶ 19.

Second, a review of the description of the USMLE Step 2 CS (Exhibit 17) from the materials made available to examinees, does not disclose any credible contention that text-to-speech fundamentally alters the exam. For example, the CIS subcomponent assesses the examinees questioning skills which includes, use of open ended questions; transitional statements; facilitating remarks; avoidance of leading questions or repeat questions. Information sharing skills are also assessed and include, acknowledging patient concerns; clearly responding with information; clearly providing counseling or statement about next steps. The examinees professional manner and rapport are also assessed based on the following criteria: asking questions about expectations, feelings and concerns of the patient; showing concerns for

---

[11]     The *Liberty Resources* case construed the reasonable accommodations requirement under Title II (applying to public entities) which are nearly identical to the reasonable accommodations provisions of Title III.

[12]     Elizabeth Azari's October 13, 2009 letter (Exhibit 9) states that the accommodation requesting the use of an orator created a fundamental alteration. However, Dr. Farmer's letter dated October 27, 2009 (Exhibit 11) neither asserts that text-to-speech fundamentally alters the examination nor does she provides an explanation for its denial.

patient's comfort during the physical examination; attention to cleanliness; providing opportunity for the patient to express feelings; and making empathetic remarks concerning patient's issues. None of these criteria will be altered or removed through the use of text-to-speech software.  Mr. Hartman is proposing to allow him to take the examination using his natural speech and to utilize text-to-speech when he experiences an episode of either a block or prolongation. He will still need to address the criteria set forth above and be assessed on the same criteria as other examinees.

Third, on information and belief, the NBME has approved other examinees with disabilities for accommodations which were similar to Mr. Hartman's or perhaps created a greater ministerial change. For example, on information and belief, NBME has approved the use of sign language for examinees with hearing and speech impairments.  Moreover, on information and belief; students who are blind or with significant visual impairments have taken the examination with the assistance of an aid.  If such accommodations were previously granted, it is disingenuous for NBME to submit that Mr. Hartman's request to use a text-to-speech program for portions of the examination is not reasonable because it purportedly fundamentally alters the measurement of the skills or knowledge the USMLE Step 2 CS is intended to test.

Furthermore, while each case is decided based on its specific facts, the case law which has concluded that a requested accommodation fundamentally alters the examination are distinguishable from this case and lends no support to defendant's position.  For example, in *Florida Bd. of Bar Examiners re S.G.,* 707 So.2d 323 the court held that a modification in the scoring of an exam is, by its very nature, is a modification which fundamentally alters the measurement of the skills or knowledge the examination is intended to test.  In this case the applicant who had a learning disability failed the bar exam on several occasions; however she passed certain sections of the exam.  The applicant requested but was denied the modification of averaging scores from separate administrations of the exam (from sections she passes).

Similarly, in *Falchenberg v. New York Dept. of Education*, 567 F.Supp. 2d. 513 (S.D.N.Y. 2008), the Court granted summary judgment to defendant who denied the test applicant's request for accommodations.  In this matter, the test applicant-teacher had the learning disability of dyslexia. She requested an accommodation on a section of the teacher's certification exam which entails organization, preparation and editing a written composition.  The rejected accommodation at issue sought a waiver from the spelling and grammar requirement on the written composition section.   Of note the written instructions for the certification examination expressly stated that the written assignment is evaluated on the basis of structure and conventions (including spelling, punctuation, and capitalization).  Accordingly, plaintiff sought a waiver from critical elements of the examination (spelling and grammar). 567 F.Supp. 2d at 521.  See also, *Jacobsen v. Tillmann,* 17 F. Supp. 2d 1018 (D. Minn. 1998) (Plaintiff with dyscalculia requested a waiver from the math requirement on a state's teachers' qualification examination was found by the court to be unreasonable).  In *Maczaczyj v. State of New York*, 956 F.Supp. 2d 403 (W.D. N.Y. 1997), plaintiffs disability included sever panic attacks, anxiety and social phobias.  Plaintiff gained admission to a graduate program which as part of the course work included attendance at a residency program.  Plaintiff requested an accommodation to attend the program through telecommunications distance learning rather than physical attendance. The court held that the requested accommodation created a fundamental alteration in the program which was expressly designed for face-to-face  interaction between teacher and student.

Mr. Hartman's accommodations seek no change in the grading process of the examination or elimination of a critical component of the examination.  Accordingly, there is no support in the decisional law that Mr. Hartman's request fundamentally alters the USMLE Step 2 CS.

Based on the foregoing, Mr. Hartman has demonstrated a prima facie showing of discrimination and has demonstrated a reasonable likelihood of success on the merits.

### C.       Hartman Will Suffer Irreparable Harm if the Injunction is Not Granted

Irreparable harm may be presumed when the offending party engages in acts or practices prohibited by federal statute that provides for injunctive relief.  *Gov't of Virgin Islands v. Virgin Islands Paving,* 714 F.2d. 283, 286 ["a statutory provision authorizing preliminary injunctive relief upon a showing of probable cause to believe that the statute is being violated may be considered a substitute for a finding of irreparable harm for purposes of a preliminary injunction issued under Rule 65"]. See also, *United States v. Roach*, 947 F.Supp. 872, 877 (E.D. Pa. 1996); *ReMed Recovery Care Centers v. Township of Willistown,* 36 F.Supp.2d 676, 688 (E.D. PA. 1999).

Title III of the ADA provides express provisions authorizing injunctive relief upon a showing of probable cause that the statute is violated.  42 U.S.C. §12188(a)(1).  Moreover, injunctive relief is the only relief available to an individual plaintiff.  Section 12188(a)(1) provides, "the remedies and procedures set forth in section 2000a-3(a) are the remedies and procedures of this subchapter.."  42 U.S.C. 2000a-3(a) provides: "a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved."   See also, *Barbosa v. Amer. Osteopathic Bd. Of Surgery*, 2008 U.S.Dist. LEXIS 51457 (S.D. OH May 23, 2008) [dismissing claims for monetary damages]; *Powell v. Nat'l Bd. Of Med. Examiners* 364 F.3d 79, 86 (2d Cir. 2004) (holding that "a private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages."); *Scheibe v. Nat'l Bd. Of Med. Examiners,* 2005 U.S. Dist. LEXIS 8725, 2005 WL 1114497, *4 (W.D. Wis. May 10, 2005). As noted above, Mr. Hartman has made a prima facie showing as a person with a disability, who has been denied reasonable accommodations by NBME.  Accordingly, because section 12188(a)(1) expressly provides for injunctive relieve, Mr. Hartman is presumed to have suffered irreparable harm.

Furthermore, Mr. Hartman can demonstrate that has and will continue to suffer irreparable harm even if irreparable harm is not presumed as asserted above. Irreparable harm is characterized as a "clear showing of immediate irreparable injury" or a "present existing actual threat" which cannot be redressed adequately by monetary damages. *Continental Group, Inc. v. Amoco Chemicals Corp.,* 614 F.2d 351, 359 (3d.Cir. 1980). Without the reasonable accommodations that Mr. Hartman has requested, he will not receive a score on the USMLE Step 2 CS commensurate with his actual abilities; he will be significantly disadvantaged when compared to other medical students both on the examination and in qualifying for a residency program. Hartman Declaration ¶¶ 29-31.  Furthermore, if he does not successfully complete the USMLE Step 2 CS, he will be unable to complete his medical school education, graduate and receive consideration for a residency position. Additionally, if he does not receive appropriate and reasonable accommodations and auxiliary aids, he will be placed at a disadvantage of competing for quality residency positions.  His medical career could end if he is not given a fair opportunity to pass the USMLE Step 2 CS through the implementation of the requested reasonable accommodations. Hartman Declaration ¶¶ 29-31. NBME's refusal to provide reasonable and appropriate accommodations places Mr. Hartman at a disadvantage and may end his medical education and career in which he has invested considerable time and money. It is necessary to grant an immediate preliminary injunction, inasmuch as many of the pathology residency programs to which Mr. Hartman has applied require, among other things, a passing grade (on the USMLE Step 2 CS)  prior to the National Residency Match held on March 18, 2010. See Hartman Declaration ¶ 31.  This immediate and actual harm cannot be repaired absent preliminary injunctive relief.  Moreover, as noted above, no other remedy at law is available. Courts have granted preliminary injunctive relief against testing agencies under similar circumstances. See e.g., *Agranoff v. Law School Admission Council, Inc.*, 97 F. Supp. 2d 86

(Mass. 1999); *Rush v. National BD. Of Medical Examiners,* 268 F. Supp.2d 673 (N.D. Tex.

2003).  Accordingly, injunctive relief under such circumstances is not extraordinary.

      **D.**      **The Equities Weigh In Favor of Granting The Preliminary Injunction**

      As noted above, NBME's denial of Mr. Hartman's request for reasonable

accommodations, deprives him of the opportunity to take the USMLE Step 2 CS on a level

playing field with non-disabled test takers.  Dr. Tetnowski's assessments and report establish that

Mr. Hartman's speech impairment is so profound that that he is dramatically disadvantage when

taking the examination without an appropriate accommodation of text-to-speech.  Inasmuch as

his rate of speech alone is more than eight time slower than the average adult, he could never ask

or answer the same amount of questions to the standardized patient as the non-disabled

examinee.  Furthermore, Mr. Hartman's ability to engage in reciprocal conversation is severely

handicapped by his disability and could only be assisted through the use of a text-to-speech

program.   Denying Mr. Hartman appropriate accommodations will have a considerable impact

in his ability to fairly complete the USMLE Step 2 CS and demonstrate his true knowledge and

skill.  Administering the examination with the currently approved accommodations will result in

an outcome that reflects Mr. Hartman's impaired speaking skills and is therefore contrary to the

regulations.  See.  28 C.F.R. §36.309(b)(1)(i).  If Mr. Hartman is not administer the examination

in a fair manner and receives a failed outcome, it can have a profound effect on his career and

perhaps may end his ability and training to become a physician.

      By contrast, the harm that an injunction will cause NBME is marginal when compared to

the harm to Mr. Hartman.  It is anticipated that NBME will submit that the requested

accommodations impact the integrity of the examination and the ensuing medical licensure. The

requested accommodations will not diminish the integrity of the examination.  There is no

credible evidence that the use of a text-to-speech program gives Mr. Hartman any advantage

over non-disable examinees.  The accommodations do not seek to alter the content or construct

of the examination.  Mr. Hartman, when necessary, will still be required to communicate the same substantive information via text-to-speech to the standardized patient. Furthermore, the requested accommodations do not seek to alter the manner in which the examination is graded.

Furthermore, it has been held that the threatened injury to the student outweighs any damage that granting the preliminary injunction might cause to the NBME or other licensing entities or to the public. See e.g., *Rush v. National Board of Medical Examiners*, 268 F.Supp. 2d 673, 679 (N.D. Texas 2003);

### E.      Granting the Preliminary Injunction Will Advance Public Interest

The ADA was enacted to serve the strong public interest to "elimin[ate] discrimination against people with disabilities." 42 U.S.C. §12101(b)(1).  In the context of preliminary injunctions, courts have found that "[t]he public interest is clearly served by eliminating the discrimination Congress sought to prevent in passing the ADA." *Jones v. City of Monroe, MI,* 341 F.3d 474, 490 (6th Cir. 2003); see also., *Agranoff v. Law School Admission Council, Inc.*, 97 F. Supp. 2d 86, 88 (Mass. 1999)("court has an obvious public interest in providing those with disabilities equal footing").  Furthermore, the policy considerations embodied in the ADA are made explicit in the findings and purpose of the Act.  Specifically, the Act provides, "individuals with disabilities continually encounter various forms of discrimination" which includes "the failure to make modifications to existing facilities and practices" and "exclusionary qualification standards and criteria." 42 U.S.C. §12101(a)(5).

Accordingly, granting the injunctive relief requested by Mr. Hartman is consistent with the anti-discrimination mandate of the ADA and therefore serves the public interest.


## IV.    CONCLUSION

For the foregoing reasons, Mr. Hartman respectfully requests that the Court grant his Motion for Preliminary Injunction which compels defendant, NBME to provide accommodations during the USMLE Step 2 CS which includes: (1) use of computer or electronic device(s) with text to speech software to communicate during patient encounters; (2) an additional 15 minutes (double

time) on each patient encounter; (3) face to face encounters instead of a telephone encounter; (4) permit Mr. Hartman to complete the USMLE Step 2 CS during the first week of February 2010; (5) reporting the grade of the examination on or before March 1, 2010.

Respectfully submitted

By:_____/S/_____

Charles Weiner, Esquire
PA Attorney I.D. #52926
Counsel for Elie Grinbaum
179 North Broad Street
Doylestown, PA 18901
215-348-4283
 (FAX) 215-340-2412
e-mail: charles@charlesweinerlaw.com