UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AARON L. HARTMAN<br>　　　　　　Plaintiff<br><br>v.<br><br>NATIONAL BOARD OF MEDICAL EXAMINERS,<br>　　　　　　Defendant<br>_____ | Civil Action  09-5028<br><br>**DECLARATION OF<br>AARON HARTMAN** |

　　　　I, Aaron Hartman, submit this declaration based upon my personal knowledge. If called upon to testify, I can and will testify truthfully and accurately to the facts contained herein.

　　　　1.　　I am a fourth year medical student who was expected to graduate medical school in December 2009.

　　　　2.　　My speech is affected by very severe stuttering.  My speech is characterized by severe dysfluencies in the form of extended pauses between syllables, prolongations and repetitions of initial sounds as well as sounds within words.  During periods of elevated stress, these pauses can last up to several minutes between syllables and my dysfluencies become significantly more pronounced.

　　　　3.　　In addition to severe dysfluencies, I have in the past displayed accompanying physical concomitants such as jaw muscle tensing, eye blinking, lip pressing, and poor eye contact when speaking.

　　　　4.　　Since the age of five, I have been impaired with severe stuttering.  Throughout elementary and high school, I received various episodes of speech therapy to help ameliorate the affects of my dysfluent speech. I have continued to receive speech therapy in college and again

in medical school. Despite years of speech therapy, my speech is still severely impaired by stuttering.

5. As a result of my speech impairment, I am extremely self conscious and consequently participate minimally or avoid activities that require speaking. I have withdrawn from social interaction even among friends. To communicate on the telephone I have relied on a teletypewriter device ("TTY").[1] When a TTY is not available, I often avoid answering or speaking on the phone.

6. When I do speak on the phone, persons on the other end of a phone conversation often hang up. When I speak, there are often very long blocks (where no sound is produced) which last many seconds or even minutes between syllables; the other caller presumably believes the call has been disconnected.

7. I have always performed very well academically in academic settings. In college at the State University of New York (SUNY) Geneseo, I graduated summa cum laude. Based on my academic performance in undergraduate school, I was able to gain admission to SUNY Stony Brook School of Medicine.

8. I am currently in my fourth year of medical school. Throughout medical school I have performed satisfactorily and have passed all of the requirements for graduation except for passing the USMLE Step 2 Clinical Skills examination. Furthermore, I have applied for and I am interviewing for residency programs the field of pathology. I have chosen this field because of my interest in the science of pathology and because it involves marginal or perhaps no clinical contact with patients. Accordingly, my career path has been guided in large part as a result of my impaired speech.

---

[1] A TTY devise or Text Telephone devise is connected to the phone lines on both ends and allows the participants to type messages back and forth to one another instead of talking and listening.

- 2 -

9. Prior to beginning my third year of medical school, because I was never required to demonstrate speech or communicative skills or at least my performance had not been assessed on the manner in which I speak in an academic setting, I had been able to achieve academic success without accommodations or auxiliary aids for persons with impaired speaking skills. After this time, when I began clinical training, SUNY Stony Brook School of Medicine granted me double time for oral examinations.

10. On or about May 14, 2007, I received a speech fluency evaluation from Leslie Oldemeyer, MS CCC-SLP who placed her findings and recommendations in a written report.

11. As a medical student and prospective physician, it is necessary to become familiar with the requirements for graduating medical school, obtaining licensure and for acceptance/entry into a residency program.

12. Among other requirements, a passing grade on the USMLE Step 2 Clinical Skills (Step 2 CS) is required in order to graduate SUNY Stony Brook School of Medicine, begin most residency programs to which I have applied, and obtain state medical licensure. Furthermore, anticipation of meeting all requirements of the residency program is required to qualify for the National Residency Matching Program (the "match"). The match orchestrates the acceptance of a medical school student into a residency program following graduation from medical school. Placement in a residency program is a required medical training component for all physicians.

13. Throughout 2009, I have received speech therapy sessions from Emily McCafferty, M.S., CCC-CLP.

14. During the summer/fall 2008, I applied to the National Board of Medical Examiners (NBME) for accommodations on the Step 2 CS examination. My initial request submitted in July 2008 requested double extended time, i.e. an additional 15 minutes for each patient encounter portion of the examination. With this application for accommodations, I provided (1) the Applicant Request for Test Accommodations;  (2) Certification(s) of Prior Test

Accommodations; (3) Personal Statement; (4) Leslie Oldemeyer, MS CCC-SLP, Speech Pathology report dated 5-14-2007. These submissions are annexed as Exhibit 2 to Plaintiff's Motion for Preliminary Injunction.

15. In October 2008, I applied for an additional accommodation which included use of a Teletypewriter ("TTY") (e.g. Ameriphone Q90D) for use on any telephone patient encounter. With this application, I submitted the following: (1) Cover letter dated October 31, 2009; (2) the Applicant Request for Test Accommodations; (3) Letter from Emily McCafferty, M.S., CCC-CLP. These submissions are annexed as Exhibit 3 to Plaintiff's Motion for Preliminary Injunction.

16. NBME rejected my request for double time and use of TTY for the telephone encounter(s). Instead, NBME provided time and a half for each patient encounter and substituted live patient encounter(s) for the telephone patient encounter(s).

17. On June 26, 2009, I completed the Step 2 CS utilizing the accommodation approved by the NBME.

18. Throughout the Step 2 CS, I encountered significant barriers as a direct result of my severely impaired speech. It was difficult to respond to patients and engage in a reciprocal dialogue and I was not able to provide an immediate appropriate response when required. Because of my impaired speech it was difficult to establish a rapport, engage in an interactive discussion with the standardized patient, respond to patient inquiries, maintain eye contact and have sufficient opportunity is ask questions.

19. The USMLE Step 2 CS Performance Profile (score report) reflects a passing performance on the Integrated Clinical Encounter (ICE) and Spoken English Proficiency subcomponents. However, on the Integrated Clinical Encounter, I received a failed performance. Accordingly, the overall outcome of the June 2009 Step 2 CS was failed. A copy of the score report is annexed as Exhibit 4.

20. The failed outcome on the USMLE Step 2 CS was a direct and proximate result of my impaired speech coupled with inappropriate accommodations. Even on the areas where I received a passing outcome (except the patient note which did not involve verbal communication) my performance and grade reflected my impaired speaking skills and not my true ability.

21. In September 2009, I applied for accommodations to take the Step 2 CS a second time. My application requested the opportunity to utilize a laptop for the purpose of typing questions and responses which an orator would then verbalize to the standard patient. At the time of this application, I was unfamiliar with various forms of assistive technology (other than TTY) such as text to speech software. Because I was requesting the use of an orator my request for accommodations also indicated that the standard patient rating scales be modified to reflect the use of an orator. With this application, I included the following: (1) USMLE Form Requesting Subsequent Test Accommodations; (2) Applicant's Request for Test Accommodations; (3) Letter dated September 17, 2009 from Emily McCafferty, M.S., CCC/SLP; (4) Letter dated September 17, 2009 from Aaron Hartman. These submissions are annexed as Exhibit 5 to Plaintiff's Motion for Preliminary Injunction.

22. By letter dated September 29, 2009, NBME rejected my request for the accommodation of typing questions and responses and utilize and orator to communicated with the standardized patient. NBME approved an additional accommodation of double time i.e. 15 additional minutes for each patient encounter. A copy of NBME's September 29, 2009 letter is annexed as Exhibit 6 to Plaintiff's Motion for Preliminary Injunction.

23. I further called NBME's management in disability services to discuss the problems with the first administration of the Step 2 CS and to identify appropriate accommodations and request assistive technology. I further enlisted the aid of my father, Gerald Hartman, M.D. to speak with NBME personnel because I needed assistance with speaking to

individuals. Furthermore, on several occasions when I attempted to call, NBME staff hung up on me presumably because while on the phone, I was unable to utter a word or sound as a result of my impairment and NBME staff presumably did not realize I was on the phone.

24. As a result of being hung up on by NBME personnel, I sent a letter dated October 1, 2009, to advise Dr. Farmer (NBME disability services) that the speech evaluation report by Dr. Oldemeyer (see Exhibit 2) disclosed that it takes me four times longer than the typical person to speak and that the double time accommodations that NBME approved was not appropriate. A copy of the October 1, 2009 letter is annexed as Exhibit 7 to Plaintiff's Motion for Preliminary Injunction.

25. By letter dated October 5, 2009 to Elizabeth D. Azari, J.D., Associate Vice President of NBME, I reiterated my request for an auxiliary aid for my impaired speaking skills. A copy of this letter is annexed as Exhibit 8 to Plaintiff's Motion for Preliminary Injunction.

26. By letter dated October 13, 2009, Ms. Azari rejected my request to type answers and use an orator to communicate during the patient encounter on the Step 2 CS. A copy of this letter is annexed as Exhibit 9 to Plaintiff's Motion for Preliminary Injunction.

27. Through counsel, NBME was requested to reconsider its position concerning accommodation on the Step 2 CS. Counsel also requested that text-to-speech be considered as an auxiliary aid for the examination. A copy of counsel's letter dated October 16, 2009 is annexed as Exhibit 10 to Plaintiff's Motion for Preliminary Injunction.

28. By letter dated October 27, 2009, my request to use a text-to-speech program as an accommodation was rejected. A copy of NBME's letter is annexed as Exhibit 11 to Plaintiff's Motion for Preliminary Injunction.

29. If I do not receive appropriate accommodations and be permitted to take the examination and receive a passing outcome, I will be irreparably harmed. One of the requirements for graduation from Stony Brook University School of Medicine is to pass the Step

2 CS. A letter dated October 5, 2009 from Latha Chandran, MD, Vice Dean of Stony Brook University School of Medicine indicates the graduation requirements. A copy of this letter is annexed as Exhibit 16 to Plaintiff's Motion for Preliminary Injunction. Furthermore, if a student does not pass within three attempts s/he will be subject to dismissal from medical school.

30. If I do not successfully complete the Step 2 CS, I will be unable to complete my medical school education and graduate and receive consideration for a residency position. Furthermore, if I do not receive appropriate and reasonable accommodations and auxiliary aids, I will be placed at a disadvantage of competing for quality residency positions. My medical career could end if I am unable to pass the USMLE Step 2 CS examination, due to NBME's refusal to provide reasonable and appropriate accommodations.

31. The National Residency Match occurs on March 18, 2010. Furthermore, many residency programs to which I have applied indicated that they want a passing score on Step 2 CS prior to the Match. Accordingly, on information and belief, I must receive a passing grade by March 1, 2010 in order to be eligible for acceptance into these residency programs.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 21ST day of December, 2009.

*Aaron Hartman*
Aaron Hartman