UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AARON L. HARTMAN<br>　　　　　　Plaintiff<br><br>　　　　v.<br><br>NATIONAL BOARD OF MEDICAL EXAMINERS,<br>　　　　　　Defendant<br>_____ | Civil Action  09-5028<br><br><br>**DECLARATION OF<br>JOHN A. TETNOWSKI, Ph.D, CCC-SLP, BRS/M-FD** |

　　　　I John A. Tetnowski, Ph.D, CCC-SLP, BRS/M-FD, submit this declaration based upon my personal knowledge. If called upon to testify, I can and will testify truthfully and accurately to the facts contained herein.

　　　　1.　　I am Professor in Communicative Disorders at the University of Louisiana.  I hold a Masters in Communicative Disorder and a Ph.D. in Audiology and Speech-Language Pathology.

　　　　2.　　I have been issued a Certificate of Clinical Competence (CCC) by the American Speech-Language-Hearing Association; received designation as Board Recognized Fluency Specialist and Fluency Mentor by the Specialty Board on Fluency Disorders.

　　　　3.　　I have conducted research, published articles and delivered presentations on over 150 occasions, primarily on the topic of stuttering.

　　　　4.　　I have conducted hundreds of assessment on individuals with speech impairments with a particular focus on the identification and treatment of stuttering.

5. A true and correct copy of my curriculum vitae listing my experience, publications, presentations and other relevant experiences is annexed as Exhibit 14 to Plaintiff's Motion for Preliminary Injunction.

6. I consider myself to be an expert and have testified as an expert in court proceedings on the subjects of speech fluency and stuttering; the evaluation of speech fluency impairments and ameliorating speech fluency impairments.

7. On or about December 7, 2009, I conducted a thorough speech evaluation of Mr. Aaron Hartman to further assess his ability to communicate on the USMLE Step 2 CS examination.

8. I evaluated Mr. Hartman for approximately six hours. The evaluation consisted of a review of his prior speech evaluation records submitted to NBME, a history taken from Mr. Hartman, clinical observations, standardized testing and observations in non-clinical settings.

9. A summary of the results of testing, my findings and recommendations are set forth in a written report which is annexed as Exhibit 15 to Plaintiff's Motion for Preliminary Injunction.

10. Based on patient report, Mr. Hartman has had approximately fifteen years of speech therapy.

11. Based on my observations and assessments, it is notable that Mr. Hartman stuttered on almost every other word and many episodes of stuttering lasted over two minutes. His speech is marked by long blocks (i.e. attempts to talk where sound or words are not produced) many of which last for considerable periods of time, often over one minute and sometimes over two minutes. Consequently, Mr. Hartman is greatly handicapped by his stuttering in every setting of verbal communication

12. The assessment of stuttering entails data collection of Mr. Hartman's communication under many different levels of linguistic and environmental complexity. From

each sample, a percentage of stuttering syllables (%SS) was calculated. The measures assessed indentified part-word repetitions (e.g. d-d-d-dog), single syllable word repetitions (e.g. by-by-by-by the window), prolongations (e.g. wwwwwwwag) and blocks.

13. A chart contained in my report (Exhibit 15- 3rd page) illustrates the severity of Mr. Hartman's impairment. The assessment entailed an observation of twelve tasks, namely, one syllable word repetition, naming and reading (three separate tasks); multi-syllable word repetition, naming and reading (three tasks); phrase repetition; sentence reading; sentence formulation; reading a short paragraph; dialogue with examiner; and monologue with examiner. Of the twelve tasks included in the assessment, Mr. Hartman showed significant stuttering across all tasks with stuttering ranging from 26% to 70% (over 3% is indicative of stuttering). In half the tasks measured, Mr. Hartman's stuttering range exceeded 50% and consisted of part-word repetitions and blocks.

14. I also administered a standardized test of speech naturalness in both reading tasks and non-reading dialogue. The measure is on a 9 point scale with a score of 1 being "highly natural" to a score of 9 which is "highly unnatural". Mr. Hartman was rated a 9 (i.e. highly unnatural) for both the reading and non-reading dialogue due to the excessive amount of stuttering and the severity (length of the stuttering moments).

15. Mr. Hartman's rate of speech was also evaluated during dialogue. I measured several samples during dialogue. Mr. Hartman's average speaking rate was measured at 30 syllables per minute as compared to normative data which reflects that adults speak at a rate of 255 syllables per minute. Accordingly, I concluded that Mr. Hartman's rate of speech which is over eight times slower than expected is greatly affected by stuttering.

16. I also induced various fluency improvement techniques and devices to assess whether stuttering can be reduced and to assist in identifying potential auxiliary aids to utilize on the USMLE Step 2 CS. These techniques included easy onset (i.e. reduced tension at the

beginning of each utterance); prolonged speech (i.e. prolonging each syllable for slightly longer than normal duration to decrease speaking rate); and continuous phonation (speaking without prolonged pauses).  Additionally, electronic fluency devises were utilized such as a delayed auditory feed back devise (DAF) and frequency altered feedback devise (FAF).  A DAF user hears his/her voice in headphones delayed a fraction of a second.  The intent is for people who stutter to produce slow, prolonged but stutter-free speech.  The FAF changes the pitch at which the user hears his/her voice and is also designed to reduce stuttering.

17.  On most tasks assessed inducing various fluency improvement techniques, Mr. Hartman showed only marginal improvement and still remained with significant stuttering.  Based on the results of theses assessments, I concluded that fluency induction could not easily modify Mr. Hartman's speech.   The only technique deemed successful was choral reading.  Choral reading entails another person reading in unison with speaker.  However, choral reading is not a viable option for the administration of the USMLE Step 2 CS because it requires the assistance of another person and involves speech from reading out loud as opposed to spontaneous speech or dialogue.

18.  I also observed Mr. Hartman utilize a text-to-speech program and engaged in a role play scenario with him.  He often attempted to speak but when he came across a severe block or repetition, he would type his response on his portable computer which was converted to computerized speech output. Although the method was slower than the typical person's speech, it was faster, clearer and more effective than any other form of communication that Mr. Hartman exhibited.

19.  Based on the assessments performed and observations, I have concluded that Mr. Hartman's stuttering is very severe in nature.  I recommend that Mr. Hartman be allowed to use a text-to-speech program with a portable devise to minimize the handicapping aspect of his stuttering while taking the USMLE Step 2 CS.  I further recommend additional time be allotted

and that Mr. Hartman should be encouraged to use verbal expression whenever possible and utilize text-to-speech as a supplemental tool when he has a severe block in speech. I note that this auxiliary aid is an appropriate accommodation while not giving Mr. Hartman any advantage over other examinees. Given the severity of Mr. Hartman's impairment, there is no accommodation that removes the disadvantages he is expected to experience on the examination. However, utilization of text-to speech software provides an improvement over direct speech.

20.    Furthermore, allowing Mr. Hartman to use a text-to-speech program would not alter the skills or knowledge the Step 2 CS is intended to measure. This opinion is based on my evaluation and review of the written material about the Step 2 CS available on USMLE's web site. This written material is annexed as Exhibit 17 to Plaintiff's Motion for Preliminary Injunction.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 21 day of December, 2009.

John A. Tetnowski, Ph.D. CCC-SLP, BRS/M-FD.