UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AARON L. HARTMAN,

        Plaintiff,

v.                                                                  No. 09-5028

NATIONAL BOARD OF MEDICAL
EXAMINERS,

        Defendant.

### DEFENDANT NBME'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendant National Board of Medical Examiners ("NBME") respectfully submits this Supplemental Brief in Opposition to Plaintiff's Motion to Compel Defendant to Answer Interrogatories and Produce Documents and Tangible Things (filed 1/28/2010).[1]

I.    PLAINTIFF HAS NOT RAISED ANY CLAIM THAT THE NBME VIOLATED THE ADA IN ITS HANDLING OF PLAINTIFF'S PRIOR REQUEST FOR ACCOMMODATIONS OR THAT ANY ADA VIOLATIONS OCCURRED WHEN THE NBME ADMINISTERED THE STEP 2 CS EXAMINATION IN JUNE 2009.

Mr. Hartman's claims advanced in the underlying Complaint relate entirely and completely to the manner in which NBME handled a request for testing accommodations for re-taking the USMLE Step 2 CS examination. Mr. Hartman has not alleged that NBME violated the ADA in its handling of his prior (pre-June 2009)

---

[1] On February 5, 2010, NBME supplied Mr. Hartman's Counsel with Supplemental Information in response to Interrogatory Number 11, providing ALL information Mr. Hartman had requested in that Interrogatory, ostensibly making argument on that particular Interrogatory moot.

80749673.1

- 1 -

request for accommodations, that any ADA violations took place when NBME administered the Step 2 CS exam to him in June 2009, or that the NBME improperly scored the exam.

In the Wherefore Paragraph of Count I and Count II's request for relief, Plaintiff seeks relief from this Court in the form of Court-Ordered accommodations on a future test. Complaint, Count I and p.16, Count II, subparagraph (1). Plaintiff never raises a claim of discriminatory testing processes or claims regarding the standardized patients, their alleged bias, bias in the nature of the exam, etc. *See, e.g.*, Complaint ¶¶ 1, 2, 22, 39, 44, 45 and 46 (The only references are to discriminatory practices in evaluating the request for accommodations.).

Mr. Hartman, nevertheless, seeks the names and addresses of the individuals who served as the standardized patients, videotaped encounters from the June 2009 administration, and the heretofore unpublished and non-publicly disclosed detailed "forms, rubrics, or grade scoring documents, rating scale documents, check lists, [or] other documents reflecting the scoring criteria," or any "training materials, video[s], booklet[s], pamphlets or other documentation or tangible things that are utilized in the training of standardized patients involved in the examination."

The claims in the present lawsuit bear no relation to Mr. Hartman's performance on the Step 2 CS exam in June 2009. The demand for production is a fishing expedition to discover highly sensitive, confidential and proprietary information.

II. **THE LIVE TEST MATERIALS MR. HARTMAN SEEKS ARE EXTREMELY TIME CONSUMING AND COSTLY TO PRODUCE, THE PRODUCTION OF WHICH WOULD POTENTIALLY DISRUPT THE ADMINISTRATION OF THE STEP 2 CS EXAM.**

With respect to the videotaped recordings Mr. Hartman seeks, there is no basis

to suggest this information is relevant or related to Mr. Hartman's claims.[2] In further support of NBME's opposition to producing the videotapes, NBME attaches hereto and submits to the Court an executed Declaration from Colette Scott, Director, Clinical Skills Examination Collaboration ("CSEC") Test Material Development and Delivery, who oversees case development, delivery, and maintenance for the Step 2 Clinical Skills ("CS") portion of the United States Medical Licensing Examination ("USMLE"). Scott Declaration, Exhibit "1" hereto, ¶¶ 1-2.

Ms. Scott's detailed Declaration describes the time consuming, meticulous, and costly process for creating a single standardized patient encounter (Mr. Hartman seeks disclosure of 12 encounters). Ms. Scott details the creation, review, monitoring, analysis, training, editing, pre-testing procedures, validation, quality control measures and other steps required to create a single, standardized patient encounter. *See* Scott Declaration, Exhibit "1", ¶¶ 7-15. NBME reiterates that there is no basis identified in the Complaint or otherwise to subject this information to disclosure. <u>Neither Mr. Hartman, nor his Counsel has provided any explanation to support these requests, merely resting upon the broad statement that the information is "relevant", which the NBME disputes.</u> In addition, exposure of one or more live cases would compromise the USMLE program's ability to administer the examination and potentially disrupt the administration

---

[2] Pursuant to Plaintiff's Counsel's specific request, NBME planned to produce for deposition on Tuesday, February 9, 2010, two employees to address (in general terms) what the Step 2 CS exam is intended to assess and how examinees are evaluated. That testimony, combined with the grading-related information on the USMLE website and in documents NBME produced, will provide adequate information to Mr. Hartman regarding the test, what it assesses, how it is administered, and how the exam is graded, including relevant psychometric principles. On Friday February 5th, Plaintiff's Counsel unilaterally cancelled these depositions, over NBME's Counsel's objection, arguing that he wanted to postpone these until after Tuesday's hearing. NBME has already produced Cathy Farmer, Psy.D., Manager, Disability Services and Compliance Officer, Testing Programs, who spent a day answering Mr. Weiner's questions about the administration of Mr. Hartman's file and the bases for NBME's denial of certain of Mr. Hartman's requested accommodations.

of Step 2 CS for other applicants, since there are a limited number of cases in the Step 2 CS bank.  *See* Scott Declaration, Exhibit "1", ¶ 16.

It is respectfully submitted that this Court should deny Mr. Hartman's Motion to Compel any additional documents in response to Document Requests 4, 5 and 7 and any additional information in response to Interrogatories 8 and 9.

                Respectfully submitted,

                EASTBURN AND GRAY, P.C.

                _____
                Jane E. Leopold-Leventhal
                Grace M. Deon
                60 East Court Street
                P.O. Box 1389
                Doylestown, PA  18901
                Telephone:  215-345-7000
                Facsimile:  215-345-0174

                *Attorneys for Defendant*
                *National Board of Medical Examiners*

# EXHIBIT "1"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

AARON L. HARTMAN

        Plaintiff,

v.

NATIONAL BOARD OF MEDICAL
EXAMINERS,

        Defendant.

Civil Action No.: 09-5028

### DECLARATION OF COLETTE SCOTT, M Ed

I Colette Scott, hereby declare:

1. I am employed by the National Board of Medical Examiners ("NBME") as Director, Clinical Skills Examination Collaboration ("CSEC") Test Material Development and Delivery. As Director, CSEC Test Material Development and Delivery, I oversee case development, delivery, and maintenance for the Step 2 Clinical Skills ("CS") portion of the United States Medical Licensing Examination ("USMLE"). A copy of my resume is attached hereto as Exhibit A.

2. The NBME is a private non-profit corporation which, together with the Federation of State Medical Boards of the United States, Inc. ("FSMB"), another non-profit corporation, has established the USMLE. The USMLE is an examination designed to assess a physician's ability to apply knowledge, concepts, and principles, and to demonstrate fundamental patient-centered skills, that are important in health and disease and that constitute the basis of safe and effective patient care. Each state's medical licensing authority sets its own rules and regulations for those seeking a license to practice in that jurisdiction. Results of the USMLE are reported to these

authorities for their use in evaluating applicants seeking an initial license to practice medicine. The USMLE provides a common evaluation system for these applicants. The goals of the USMLE are (i) to provide to licensing authorities meaningful information from assessments of physician medical knowledge and skills that are important to the provision of safe and effective patient care; and (ii) to assure fairness and equity to physicians through the highest professional testing standards.

3. The mission of the NBME is to protect the health of the public by providing a common, consistent, state-of-the-art system of assessment for health professionals. Maintaining the integrity of the testing process is a critical part of the NBME's obligation to protect public safety. In order to ensure the integrity and meaning of the scores, the NBME ensures that the USMLE is administered under standard conditions and that no examinee or group of examinees receives unfair advantage over another on the examination.

4. There are three major segments to the USMLE, known as "Steps." Step 1 assesses whether an applicant can understand and apply important concepts of the sciences basic to the practice of medicine, with special emphasis on the principles and mechanisms underlying health, disease, and modes of therapy. Step 2, which consists of separate clinical knowledge ("CK") and clinical skills ("CS") components, assesses whether an applicant can apply medical knowledge, skills, and understanding of clinical science essential for the provision of patient care under supervision and includes emphasis on health promotion and disease prevention. Step 3 assesses whether an applicant can apply medical knowledge and understanding of biomedical and clinical science essential for the unsupervised practice of medicine, with emphasis on patient management in ambulatory settings.

5. Step 2 CS uses standardized patients ("SPs"), i.e., people trained to portray real

patients. As they would with a real patient, examinees are expected to establish rapport with the SP, elicit pertinent historical information, perform a focused physical examination, answer questions, and provide counseling when appropriate. After each interaction with an SP, the examinee records pertinent history and physical examination findings, lists diagnostic impressions, and outlines plans for further evaluation, if necessary. Step 2 CS cases cover common and important situations that a physician is likely to encounter in common medical practice in clinics, doctors' offices, emergency departments, and hospital settings in the United States.

6. The identities of the SPs are not revealed publicly to ensure that they are not influenced or approached by applicants planning to take Step 2 CS or by test prep organizations and to protect SPs from potential retaliation by disgruntled examinees.

7. Developing case materials for use on Step 2 CS is a lengthy, costly and meticulous process involving numerous individuals, including external consulting physicians, editors, and production staff.

8. To maintain the security and integrity of test materials, all individuals who participate in developing cases for Step 2 CS sign a confidentiality, non-disclosure agreement.

9. It takes approximately one year to develop, refine and prepare a case for use in Step 2 CS.

10. I am responsible for reviewing and monitoring the "blueprint" for the content in the Step 2 CS examination. Once a decision is made to develop a case in a particular content area, a committee of physician experts from across the United States is assembled in Philadelphia and is tasked with developing a working draft of the case scenario. This portion of the development process is very costly but necessary in order to maintain the high level of quality in Step 2 CS.

11. CSEC staff members take the draft of the case and create supporting details and script for use by the standardized patient who will portray the case. The case is then reviewed by a secondary case developer who upon completion of his/her review transmits the case to the manager of test development. The primary case developer incorporates feedback before a staff physician performs a final review. The staff physician reviews the cases and provides feedback to the primary case developer who incorporates it into the case.

12. Standardized patients are then recruited who meet the requirements as established by the case parameters. Once selected, SPs receive extensive training on how to properly portray the case.

13. After SP training is completed, the case is portrayed utilizing residents who play the role of examinees. The residents are paid an hourly rate for their participation. A minimum of 3 full encounters (SP/examinee interviews) are captured on videotape for review by the case developer. Edits and refinements are implemented and the case is then transmitted to the test delivery group who create training videos and materials for distribution.

14. During pretest, the primary case developer has a minimum of 4 teleconferences with site trainers responsible for training the SPs to the case to ensure standardization and accuracy of the SP portrayal.

15. Each case must accumulate a minimum number of encounters at a pre-test status in an un-scored exam station to allow for psychometric analysis (key validation). When sufficient data are collected, a key validation committee, including physician experts from around the country, staff physicians, and case development staff analyze the data. The key validation committee recommends case and training video refinements and these updates are made by the primary case developer. The case then goes through additional proofing steps before it is added

to the live case bank. Once key validation is completed, the case is then assigned to at least one CSEC center where extensive training of the SPs occurs with updated case materials. To ensure standardization among the five CSEC centers where the case may be portrayed, central quality control staff and case development staff are required to "sign-off" on the SP/case combination for the live exam via video approval. The case will be utilized as an ad hoc (un-scored) test item on live Step 2 CS examinations until sufficient quality control information and psychometric data are gathered. Quality control of each live SP/case through video review and data analysis is ongoing and extensive to ensure each SP continues to portray each case accurately and to ensure standardization across the five centers around the US where Step 2 CS is administered.

16. There are currently a limited number of cases in the Step 2 CS bank. Exposure of one or more live cases would compromise the USMLE program's ability to administer the examination and potentially disrupt the administration of Step 2 CS for other applicants.

17. Furthermore, exposure of components of the grading scales or other highly confidential test material could give future examinees an unfair advantage on subsequent administrations of Step 2 CS and potentially threaten the integrity of the state medical boards' licensure process.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 8TH DAY OF February, 2010.

_____
Colette Scott

# EXHIBIT A

# COLETTE L. SCOTT

1350 Crease Street ■ Philadelphia, PA  19125 ■ 215-817-9246 ■ kettyscott@comcast.net

## SUMMARY OF QUALIFICATIONS

- Over 16 years experience in project management, team supervision, training development and program implementation.
- Demonstrated skills in quality analysis, conflict management and problem solving.
- Ability to multi task and prioritize multiple projects.
- Strong background interacting with diverse group of internal and external clients.
- Excellent written, oral and interpersonal communication skills.
- Motivational leader and team player.
- Computer expertise including:  Microsoft Office Suite, Microsoft Outlook, Microsoft Project, Microsoft Publisher, Microsoft Visio, Adobe PageMaker, Adobe Photoshop, WordPerfect, Macromedia Dreamweaver, Ulead Video Editing, Internet Navigation.

## PROFESSIONAL EXPERIENCE

**NATIONAL BOARD OF MEDICAL EXAMINERS,** Philadelphia, PA                    **1998 – present**
*Manage all aspects of training/test material development and delivery activities for the United States Medical Licensure Examination Step 2 CS.*

| | |
|---|---|
| **Director, Test Development & Delivery** | 2004-Present |
| **Assistant Manager, SP Test Material Development** | 2002 – 2004 |
| **Team Leader, Standardized Patient Program** | 2000 – 2002 |
| **Standardized Patient Trainer** | 1998 – 2002 |

- Contribute to the creation and direct implementation of content specification for all test development and delivery methods.
- Develop standardized patient case training materials including facilitation of committee process, research, writing, revision and production of training videos.
- Facilitate effective collaboration between operational and research departments.
- Represent test development and delivery in project planning.
- Evaluate existing test development and delivery methods; identify and implement new methods for efficiency.
- Analyze data to identify cases for distribution to Test Centers.
- Recruit and manage a team of Case Developers and Standardized Patient Trainers.
- Design and deliver train-the-trainer programs, for new employees and medical school staff.
- Manage security protocols for maintenance of confidentiality of all materials related to the Step 2 CS Examination.
- Facilitate workshops for medical school staff on project related activities.
- Co-created prototype and implemented web-based standardized patient training materials for the United States Medical Licensure Examination Step 2 CS.
- Conducted medical school site visits to assess and audit adherence to quality control standards.

**Scott, page 2**

**WOMEN ORGANIZED AGAINST RAPE,** Philadelphia, PA                                       **1996 – 1998**
*Managed all aspects of agency volunteer program, including recruitment, training, retention and evaluation of over 100 volunteers.*

**Training Coordinator**                                                                                                   1996 – 1998
- Developed and facilitated training curriculum for new employees and volunteers.
- Designed and delivered sexual assault awareness and prevention workshops to professional organizations.
- Redesigned and enhanced training and reference manuals.
- Developed agency video, brochures and training series.
- Resolved emergency and crisis situations; provided appropriate monitoring and follow-up.

**PHILADELPHIA UNIVERSITY,** Philadelphia, PA                                              **1993-1996**
*Oversaw operations of campus residence hall program for seven facilities.*

**Acting Director of Residential and Commuter Programs**                                 1996
**Assistant Director of Residential and Commuter Programs**                       1994 – 1996
**Resident Director**                                                                                       1993 – 1994
- Managed and evaluated residence hall staff members.
- Created staff recruitment strategies and coordinated selection process.
- Provided personal, disciplinary and resource counseling to students and staff.
- Designed and implemented staff training programs including Assertiveness Skills, Communication / Listening Skills, Conflict Resolution, Diversity Awareness, Goal Setting, Sexual Harassment and Team Building.
- Redesigned and enhanced training and reference manuals.

## EDUCATION

**STATE UNIVERSITY OF NEW YORK AT BUFFALO**
- **Master of Education,** Counseling and Educational Psychology
- **Bachelor of Arts,** Human Service Administration, Minor: Sociology

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AARON L. HARTMAN, | : |
| Plaintiff | : No. 09-5028 |
| v. | : |
| NATIONAL BOARD OF MEDICAL EXAMINERS, | : |
| | : Civil Action |
| Defendant | : |

## CERTIFICATE OF SERVICE

Jane E. Leopold-Leventhal, counsel for Defendant, National Board of Medical Examiners, certifies that on the 8th day of February, 2010, she served via facsimile and first class mail a true and correct copy of Defendant's Supplemental Brief in Opposition to Plaintiff's Motion to Compel Defendant to Answer Interrogatories and Produce Documents and Tangible Things, to counsel of record named below:

Charles Weiner, Esquire
179 North Broad Street
Doylestown, PA 18901

EASTBURN AND GRAY, P.C.

_____
Jane E. Leopold-Leventhal
Grace M. Deon
Attorneys for Defendant,
National Board of Medical Examiners