# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AARON L. HARTMAN,
                Plaintiff,

v.

NATIONAL BOARD OF MEDICAL EXAMINERS,
                Defendant.

Civil Action No. 09-5028

## MEMORANDUM

March 9, 2010                                                                        Pollak, J

      Before the court is a suit by plaintiff Aaron L. Hartman against defendant National Board of Medical Examiners (NBME) arising under the Americans with Disabilities Act (ADA). Plaintiff has moved for a preliminary injunction (docket no. 8) directing defendant NBME to provide certain accommodations when plaintiff takes the United States Medical Licensing Examination (USMLE) Step 2 Clinical Skills examination. The requested accommodations are (1) use of an electronic text-to-speech device, (2) double the length of time for patient encounters, and (3) replacement of telephone patient encounters with in-person patient encounters. Following discovery, the defendant opposes the request for use of a text-to-speech device, but acquiesces in the other requests. A five-day hearing has been held to take testimony and hear argument.

**I.     Findings of Fact**

1.  Aaron Hartman is a fourth-year medical student at SUNY Stony Brook School of Medicine.

2.  Hartman has a profound stutter that can result in pauses between syllables–called blocks–ranging from several seconds up to periods of half a minute or more.

3.  He has completed all the requirements for graduation from Stony Brook except passing the USMLE Step 2 Clinical Skills (CS) examination.

4.  He has failed the USMLE Step 2 CS examination once. He seeks to take it a second time. If he fails the examination three times, there is a substantial likelihood that he will be dismissed from medical school, as Stony Brook states its policy is to dismiss students who have failed the examination three times.

5.  Hartman hopes to enter a pathology residency once he graduates from medical school.

6.  He has chosen pathology partially due to his impaired speech because it will involve marginal or no contact with patients.

7.  Without passing the USMLE Step 2 CS, he will be unable to apply to some residencies, begin most residencies, or obtain state medical licensure.

8.  The NBME designs and administers the USMLE Examination.

9.  The USMLE Step 2 CS Examination consists of encounters–chiefly person-to-person but a few by telephone–with twelve standardized patients.

10. Standardized patients are persons who are trained by the NBME to present a standardized case for evaluation and diagnosis to the medical student taking the examination and to evaluate the student's ability to communicate and develop rapport with patients.

11. For each encounter (apart from a small number of unscored encounters) the Step 2 CS test-taker is evaluated based on three scoring components.

12. The Integrated Clinical Encounter (ICE) Component evaluates the test-taker's ability to complete a patient note summarizing the test-taker's (1) findings concerning the patient encounter, (2) diagnostic impression, and (3) initial patient work-up, based on patient information gathered by history-taking and physical examination.

13. The Communication and Interpersonal Skills (CIS) component assesses (1) questioning skills, (2) information-sharing skills, and (3) professional manner and rapport.

14. The Spoken English Proficiency (SEP) component assesses clarity of spoken English communication within the context of the doctor-patient encounter.

15. Each component is evaluated on a pass-fail basis and all three components must be passed within a single administration in order to receive a passing score on the USMLE Step 2 CS Examination.

16. The standardized patients grade the CIS and SEP sub-components, while trained

physicians grade the ICE component.

17. In October of 2008, Hartman first requested accommodations for the USMLE Step 2 CS Examination. He requested double time and use of a teletypewriter (TTY) device for the telephone encounters.

18. The NBME rejected his request and instead provided him with time-and-a-half for each patient encounter and in-person patient encounters instead of telephone patient encounters.

19. In June of 2009, Hartman took the Step 2 CS examination using the aforementioned accommodations.

20. Hartman received a passing score on the ICE and SEP components, but failed the CIS component and, in consequence, received an overall failing score.

21. Planning to take the USMLE examination a second time, Hartman, in the fall of 2009, requested accommodations including (1) double time for each patient encounter, (2) replacement of telephone encounters with in-person encounters, and (3) use of a text-to-speech device during the in-person patient encounters.

22. The NBME denied Hartman's request to use a text-to-speech device, but agreed to provide Hartman with double time for each patient encounter and in-person encounters instead of telephone encounters.

23. The present litigation springs from the NBME's continuing refusal of Hartman's request to be permitted to use a text-to-speech device during in-person patient

encounters. Hartman wishes to use this device intermittently, when he has severe stuttering blocks.

24. Hartman used the text-to-speech device, from time to time, during his testimony in court. In the numerous intervals in which he did not use the text-to-speech device, there were frequent blockages, some of them lengthy. When, after a block, Hartman was able to speak, the words he articulated were clear, correctly pronounced, normal English.

## II. Analysis

In order to merit the extraordinary relief of a preliminary injunction, Hartman must meet four factors: "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." *Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146, 154 (3d Cir. 1999).

Hartman's probability of success on the merits depends on his likelihood of prevailing under the ADA's standard for requiring reasonable accommodations. In order to succeed on an ADA claim for discrimination in testing Hartman must show: "(1) that []he is disabled, (2) that [his] requests for accommodations are reasonable, and (3) that those requests have been denied." *D'Amico v. New York State Bd. of Law Exam'rs*, 813 F. Supp. 217, 221 (W.D.N.Y. 1993). Hartman made a sufficient showing of likelihood of

5

success on all three elements. The first and third factors are not seriously disputed. The credible testimony of John Tetnowski, Ph.D, confirms that Hartman's speech is affected by a profound stutter that substantially impairs one or more major life activities. Dr. Tetnowski characterized Hartman as one of the three most severely afflicted stutterers he has seen in his professional career. Thus, Hartman is likely to succeed in showing that he is a person with a disability. Next, he testified, and documents support, that he requested the accommodations from the NBME and his requests were denied–the third requirement under the ADA.

Lastly, he has made a sufficient showing that he would be likely to prevail in proving that his requests for accommodations have been reasonable. In seeking, pursuant to the ADA, modification of an examination, it is a plaintiff's burden to show the existence of a reasonable modification, and then a defendant has the opportunity to prove that the modification is an undue burden or fundamentally alters the examination. *Bowers v. NCAA*, 118 F. Supp. 2d 494, 521 (D.N.J. 2000). The Department of Justice has issued regulations interpreting this standard to require, *inter alia*, that:

> The examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills (except where those skills are the factors that the examination purports to measure).

28 C.F.R. § 36.309(b)(1)(i). The use of a text-to-speech device is a reasonable

accommodation so long as it does not preclude assessment of the particular skills the examination purports to measure, thereby fundamentally altering the examination.

The use of the text-to-speech device does not interfere with the ability of the NBME to score Hartman's performance on the examination. The use of the device is merely an aid to, and not a replacement of, his normal speaking voice, which the examiners can still grade for the Spoken English Proficiency section of the examination. Hartman demonstrated during his testimony that he can use the device in a manner that ameliorates his most severe blocks or speech disfluencies but does not replace his normal speech. During his testimony, much of his verbal communication was through his spoken voice rather than the text-to-speech device. Hartman spoke in his own voice clearly and articulately. Intermittent use of the text-to-speech device will not hinder the standardized patients' ability to grade how and with what skill Hartman can speak in the English language.[1]

But, in deference to defendant's view that this is a fundamental alteration, I will let defendant require that Hartman also be tested without the accommodation. If Hartman takes the examination with the text-to-speech device, the NBME has the option of

---

[1] I note that the USMLE Composite Committee has considered whether providing the accommodation of a sign language interpreter to wholly replace a test-taker's speech fundamentally alters the Step 2 CS examination. The committee concluded that using an interpreter does not fundamentally alter the ICE and CIS components, but does fundamentally alter the SEP component. The Committee recommended that passing score on those components would be reported as "Pass (ICE and CIS only)." USMLE Composite Committee Meeting, January 24, 2005, Meeting Summary. There has been at least one test-taker who was granted use of a sign language interpreter and passed both the ICE and CIS components.

requiring that Hartman also take the examination with only the accommodations of double time and the replacement of telephone patient encounters with in-person patient encounters. Thus, the NBME can elect to (1) have Hartman achieve a score both with and without the accommodation of the text-to-speech device and (2) provide in its report of the examinations an explanation of the accommodations provided at each administration.

The second element–irreparable injury–is also present. Any further delays will likely cost Hartman another year in applying to residency programs, and graduating from medical school. If he takes the test without the text-to-speech accommodation, he risks another failure, which will leave him a single chance to pass the examination before running the grave risk of dismissal from medical school.

The third element for a preliminary injunction–weighing the equities–also favors the plaintiff as the delay of his potential passage of the examination will result in the irreparable harm, discussed above. In contrast, any asserted harm to the NBME's testing process is obviated by allowing defendant to require that Hartman take the Step 2 CS examination again without the text-to-speech accommodation. The weighing of the equities favors Hartman, so long as the NBME can elect to have him also take the examination without the text-to-speech device in order to provide the NBME with protection against what it fears would, otherwise, be a dilution of the integrity of the scoring process on the USMLE examination.

The last element–the public interest–also favors Hartman. The public has an interest in the elimination of discriminatory hurdles for those with disabilities. In addition, the longer Hartman continues to be barred from entering the profession, the longer society is prevented from enjoying the work of a very promising medical student. However, as the NBME points out, the public also has an important interest in maintaining high standards for those entering the medical profession. Having Hartman take the examination twice–once with the requested text-to-speech accommodation and once without–will serve both these goals, as his medical school, residency programs, and state licensing boards will have a complete picture of the skills of Hartman as tested by the USMLE Step 2 CS.

The four factors determining whether a preliminary injunction should issue favor Hartman. However, for reasons stated above, to protect against what the NBME perceives to be a threat to the integrity of the USMLE Step 2 CS testing process, I condition Hartman's use of the text-to-speech device on the NBME being able to elect that he also take the examination with only the accommodations of double time and the replacement of telephone encounters with in-person patient encounters. The NBME can then include an explanation of the accommodation given during each examination along with the score for each examination.

The plaintiff, fearing further delay in his residency applications, wishes to take the examination and receive his score as soon as feasible. Witnesses for the NBME testified

that the USMLE Step 2 CS examinations is scored by what is called the cohort process, where, in order for the results to be statistically significant and unbiased from each standardized patient's grading peculiarities and the differing difficulty levels between cases, each individualized test-taker's results are normed against the result of all test-takers over a several week period. Thus, for any examination conducted in March of 2010, the scoring cannot feasibly be completed before April 21. Due to these competing considerations, Hartman and the NBME are to complete testing, once with the accommodation of a text-to-speech device, and then, if the NBME so elects, once without the text-to-speech device, before March 27, 2010. The NBME then must release the scores to both examinations on April 21, 2010.

## III. Conclusion

For the above reasons, I grant Hartman's request for a preliminary injunction requiring that he be allowed use of a text-to-speech device, double time for each patient encounter, and replacement of the telephone patient encounters with in-person encounters. However, the NBME has the right to require that Hartman also take the examination without the accommodation of a text-to-speech device and require that the scores of both examinations be produced together with an explanation. The parties are to cooperate in drafting a joint proposed order implementing this memorandum and submit it to the court no later than Friday, March 12, 2010.